UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

**CV  15  3939**

EMMANUEL DeGRAFFE,

Plaintiff,

**AZRACK, J.**

**LINDSAY, M**

-against-

MEMORANDUM OF LAW

TOWN OF HUNTINGTON HOUSING AUTHORITY
SIELA A. BYNOE, in her capacity as Executive Director
of the Town of Huntington Housing Authority,
Defendants.

-------------------------------------------------------------------x

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | i |
| STATEMENT | 1 |
| ARGUMENT | |
| POINT I<br>The Courts Have Enunciated The Standard<br>For the Grant of a Preliminary Injunction | 2 |
| POINT II<br>Plaintiff Has a Strong Liklihood of<br>Success on the Merits of This Matter | 4 |
| CONCLUSION | 23 |

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JUL 07 2015  ★

LONG ISLAND OFFICE

TABLE OF AUTHORITIES

Page

Cases

*Basco v. Machin,*
514 F.3d 1177 (11th Circ., 2008)..................................................... 21, 22

*Boykins v. Community Development Corporation of Long Island,*
2011 WL 1059183 (E.D.N.Y.).......................................................... 15, 16, 17

*Clark v. Alexander*
85 F.3d 146 (4th Circ., 1996)........................................................... 16, 17, 18

*Davis v. The City of New York*
902 F. Supp.2d 405 (S.D.N.Y., 2012)............................................... 20

*Escalera v. New York City Housing Authority*
425 F.2d 853 (2nd Circ., 1970)......................................................... 14

*Estevez v. Cosmopolitan Associates, LLC.,*
2005 WL 3164146 (E.D.N.Y.)........................................................... 3

*Freedom Holdings Inc. v. Spitzer*
408 F.3d 112 (2nd Circ., 2005).......................................................... 3

*Gammons v. Massachusetts Department of Housing and Community Development,*
523 F.Supp.2d 76 (U.S.D.C., D. Mass., 2007).................................. 18, 19

*Goldberg v. Kelly*
397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)...................... 14, 16, 17

*Gonzaga University v. Doe*
536 U.S. 273, 122 S.Ct. 2268 (2002)............................................... 19

*Hoblock v. Albany County Bd. of Elections*
422 F.3d 77 (2nd Circ., 2005)............................................................ 3

*J.A.M. Builders, Inc. v. Herman*
233 F.3d 1350 (11th Circ., 2000)....................................................... 22

*Jackson Dairy , Inc. v. H.P. Hood & Sons*
596 F.2d 70 (2nd Circ., 1979)............................................................ 2

*Kapps v. Wing*
404 F.3d 105 (2nd Circ., 2005)..................................................................... 4

*Lawrence v. Town of Brookhaven Dept. of Housing, Community Development &*
*Intergovernmental Affairs*
2007 WL 2591845 (E.D.N.Y.)..................................................................... 2, 15

*Louis Vouton Malletier v. Dooney & Burke, Inc.*
454 F.3d 108 (2nd Circ., 2006)..................................................................... 2

*McNeil v. New York City Housing Authority, et al.*
719 F.Supp. 233 (U.S.D.C., S.D.N.Y., 1989)............................................... 3

*Price v. Rochester Housing Authority*
2006 WL 2827165 (W.D.N.Y.)..................................................................... 4

*Richardson v. Perales*
402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1970).................................. 17, 22

*Rivera v. Town of Huntington Housing Authority,*
2012 WL 1933767 (E.D.N.Y.)..................................................................... 17, 18

*Sager v. Housing Commission of Anne Arundel County*
855 F. Supp2d 524 (D. Maryland, 2012)..................................................... 20

*Save Our Valley v. Sound Transit, et al.*
335 F.3d 932 (9th Circ., 2003..................................................................... 20

*U.S. Pipe & Foundry Co. v. Webb*
579 F.2d 264 (5th Circ., 1979)..................................................................... 22

*Wright v. Roanoke Redevelopment & Housing Authority*
479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).................................. 4, 19, 20

Statutes

42 U.S.C. Section 1437 (d) (k)..................................................................... 2, 14, 15,
19, 20

42 U.S.C. Section 1437 (d) (l)..................................................................... 20
42 U.S.C. Section 1983............................................................................... 2, 18,19,
20

Regulations

24 C.F.R. Section 982.551 (h) (2)...................................................... 21

24 C.F.R. Section 982.555 (e) (5)...................................................... 21

24 C.F.R. Section 982.555 (e) (6)...................................................... 19

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
EMMANUEL DeGRAFFE,

Plaintiff,


-against-                                    MEMORANDUM OF LAW


TOWN OF HUNTINGTON HOUSING AUTHORITY,
SIELA A. BYNOE, in her capacity as Executive Director
of the Town of Huntington Housing Authority,
Defendants.
-----------------------------------------------------------------------x

STATEMENT

Plaintiff, Emmanuel DeGraffe, has filed a complaint verified on July    , 2015. He has

also moved this Court for a preliminary injunction and temporary restraining order seeking

reinstatement to the Section 8 Housing Choice Voucher Program retroactive to termination of the

Section 8 rent subsidy to his landlord, effective June 30, 2015, following an administrative

hearing decision dated June 1, 2015. Attached to the complaint are the termination notice, dated

March 30, 2012 and the decision after hearing, dated June 1, 2015. A statement of facts is part of

the complaint.

It will be argued here that the plaintiff has been denied due process in that the hearing

officer has adopted an improper standard of proof at the administrative hearing, that his decision

did not adequately address the reasons for upholding the defendants' notice terminating plaintiff

from the Section 8 Program, that the evidence at the hearing upon which the hearing officer

relied consisted of hearsay allegations from witnesses that the defendants claim are unworthy of

belief, that the hearing officer ignored, and/or failed to address, any evidence that tended to show

-1-

that the position of defendants had no basis, and failed to even comment on its credibility, that

the decision does not even state when and in what manner plaintiff violated Section 8 rules, that

the decision was not supported by substantial evidence, all in violation of Constitutional

protection and the law and regulations governing the Section 8 Program.  Defendants have

deprived plaintiff of his property right in participation in the Section 8 Housing Choice Voucher

Program and plaintiff has a remedy pursuant to 42 U.S.C. Section 1983 and 42 U.S.C. Section

1437 (d) (k).

ARGUMENT

POINT I

THE COURTS HAVE ENUNCIATED THE
STANDARD FOR THE GRANT OF A
PRELIMINARY INJUNCTION

In this Circuit, the standard that must be met for the grant of a preliminary injunction is

set forth in *Louis Voutton Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108, 113-14, (C.A.2,

2006):

> "To obtain a preliminary injunction, plaintiff must show irreparable harm
> absent injunctive relief, and either a likelihood of success on the merits, or a
> serious question going to the merits to make them a fair ground for trial, with a
> balance of hardship tipping decidedly in plaintiff's favor."
> (Citing, *Jackson Dairy, Inc. V. H.P. Hood & sons, Inc.*, 596 F.2d 70, 72 (C.A.2, 1979)

However, where the plaintiff seeks to reinstate his Section 8 subsidy, previously

terminated, and not simply to maintain the status quo, this Court in *Lawrence v. Town of*

*Brookhaven Dept. of Housing, Community Development & Intergovernmental Affairs, et al.*,

WL 4591845 (E.D.N.Y., 2007), stated as follows:

> "For this Court to issue a preliminary injunction against 'governmental action
> taken in the public interest pursuant to a statutory or regulatory scheme', however,
> the movant must show 'I irreparable harm absent the injunction and (ii) a

–2–

likelihood of success on the merits.' *Freedom Holdings, Inc., v. Spitzer*, 408 F.3d 112, 114(2d Circ., 2005) (citations omitted).  Moreover, 'where the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial likelihood of success.' *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 97 (2d Cir., 2005)."

In *McNeil v. New York City Housing Authority, et al.*, 719 F.Supp. 233 (U.S.D.C., S.D.N.Y., 1989), a case involving a challenge to the actions of the housing authority in suspending or terminating federal housing subsidies where landlords failed to make repairs, the Court said, at page 254:

"The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for pre-liminary injunction."

Similarly, in *Estevez v. Cosmopolitan Associates, LLC*, 2005 WL 3164146 (E.D.N.Y.), a case involving the refusal of a landlord to accept so-called "enhanced" Section 8 vouchers, the Court stated:

"As Cosmopolitan concedes, plaintiffs face the prospect of eviction from their homes. If Cosmopolitan is not enjoined, it will continue to seek fair market rents from plaintiffs and to refuse to accept plaintiffs' enhanced vouchers as partial payments of those rents....Plaintiffs will suffer actual and imminent harm if injunctive relief is not granted, and such harm would not be remedied by monetary damages."

Here, the total rent is approximately $2550 and plaintiff's share is $0  Two things are certain: their landlord will not allow Emmanuel DeGraffe and his family to remain at the premises paying only no rent, and the family, will never be able to enter, much less afford, ongoing rent at another dwelling.  If a preliminary injunction is not granted, the outcome is homelessness for plaintiff and his family.  In this case, plaintiff's landlord has not received a federal rent subsidy effective July 1, 2015, and has commenced a holdover summary proceeding to which there will be no defense.  As stated in the attached affirmation, counsel for plaintiff has

had many cases involving plaintiff's landlord and it is clear that the landlord is aware that when the Housing Assistance Payments (HAP) Contract ends upon termination of the rent subsidy, the lease ends and plaintiff is subject to the immediate commencement of a holdover summary proceeding.

With regard to the issue of success on the merits, it must first be stated that a Section 8 participant such as plaintiff and his family have a protected property interest in continuing to receive such assistance and such interest is subject to the protection of due process. *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 107 S. Ct. 766, 93 L. Ed.2d 781 (1987); *Kapps v. Wing*, 404 F.3d 105 (C.A.2, 2005); *Price v. Rochester Housing Authority*, WL 2827165 (W.D.N.Y., 2006).  Consequently, the issue then is whether plaintiff has been wrongfully deprived of his  property interest in a Section 8 voucher.

POINT II

PLAINTIFF HAS A STRONG LIKELIHOOD
OF SUCCESS ON THE MERITS OF THIS
MATTER

With regard to the decision of the hearing officer after the termination hearing, it should be noted that the hearing took place on seven separate dates over the course of nearly two and one-half years.  (Copy of decision is attached to the complaint as Exhibit U) Attached to his decision, the hearing officer attempted to summarize the testimony and submissions for each date.  However, his decision encompassed three pages, one of which was given to preliminary comments on the dates of the hearings, naming the parties who were present and their counsel and, finally, at the bottom of page one of the decision, Mr. Morrison makes the following comment:

–4–

> "In making a determination the Hearing Officer has had to consider all of the extensive documentation and information submitted by both sides and the testimonies of witnesses provided at these hearings."

What follows this statement are two pages in which the hearing officer credits only the testimony of police witnesses, and makes no mention of, other than listing the exhibit numbers, and fails to discuss in any way, extensive documentation and witness testimony that established that plaintiff's half-brothers, Sheldon and Deon did not reside at the premises, 7 Tippin Drive, Huntington Station, after January, 2011, and particularly at any time after the plaintiff became head of household upon the death of his mother, Gabriella DeGraffe, on November 23, 2011, or when plaintiff signed a personal declaration on October 21, 2011. It is the latter date, October 21, 2011, that defendants claim to be the date upon which plaintiff was responsible for reporting the household composition and, at which time, defendants also claim, he and his mother failed to note the alleged residence of his half brothers and Marcus Ellis.

Much of the documentation and testimony unmentioned by the hearing officer in his decision was provided by non-interested witnesses who testified that they, as mandated reporters, were obligated by law to report the presence of the brothers had they been seen at the premises. This was unchallenged.

It should be noted that the issue, however, is, not whether Sheldon and Deon Leftenant were seen around the premises, but whether they lived there. The termination notice is attached to the complaint as Exhibit A. It states that Marcus Ellis resided at 7 Tippin Drive beginning on April 2, 2009 continuing to December 16, 2011. Demonstrating the baselessness of the termination, defendants presented no evidence that Marcus Ellis ever lived at 7 Tippin Drive or that he was ever engaged in criminal activity

The termination notice claims next that Sheldon Leftenant resided at 7 Tippin Drive beginning "on or about June 3, 2010 and continuing to November 28, 2011." It should be noted at this point that Sheldon Leftenant did reside at the premises on June 3, 2010, and was reported by the then head of household, Gabriella DeGraffe, as having done so. (Exhibit C attached to complaint) He was arrested in March, 2011 and imprisoned until July. Testimony by Sheldon Leftenant and others, together with documents, established that he left 7 Tippin Drive in January, 2011 and went to live with his father, Deon Leftenant Sr. in Shirley, New York. In any event, he was arrested again on November 28, 2011, while standing in front of 7 Tippin Drive, together with plaintiff and several others. What the hearing officer fails to mention in his decision or note in his summary of the individual hearing dates, is that Gabriella DeGraffe died on November 23, 2011 and her funeral was held on December 1, 2011 (Exhibit M attached to complaint). The presence of Sheldon and Deon Leftanant on November 28, 2011 was for the purpose of planning the funeral of their mother. Sheldon Leftenant was imprisoned from November 28, 2011 to February, 2013, having pled guilty to criminal facilitation for a crime that occurred away from the premises.

It should be noted that there was no testimony whatever from police witnesses or any witnesses for defendants that any of them ever entered the premises or saw any evidence that Sheldon Leftenant lived there at a time when his presence had to be reported, no clothing found or evidence that he occupied a room. The only witnesses who entered the premises during the time periods noted were witnesses subpoenaed by plaintiff who were all mandated reporters who had, under law, to report the presence of Sheldon or Deon Leftenant had they been found to be living there.

With regard to Deon Leftenant, the termination notice stated that he resided at 7 Tippin

Drive "during various periods...beginning on or about June 30, 2011 and continuing to February 23, 2012. That time period was extended by amendment to October 12, 2012.

Deon Leftenant was never arrested during any of these periods. He testified on the last hearing date, July 10, 2014, while in a wheelchair, being treated for cancer. Once again, no testimony was ever offered by any police witness, or any other witness for defendant, to having entered the premises and seen Deon Leftenant inside, or saw clothing or any other indication that he resided there at a time when his presence would have had to be reported. The evidence established that he, too, moved from the premises in January, 2011.

There were two occasions when police witnesses testified regarding Deon Leftenant and 7 Tippin Drive, after October 21, 2011. On February 23, 2012, Deon was in a vehicle driven by Marcus Ellis. The automobile was stopped by police and the officer testified that she gave Mr. Ellis a summons for a faulty light. She testified further that Deon Leftenant stated that he lived at 7 Tippin Drive. However, this testimony was given over a year and one-half later, in November, 2013. Her testimony referred to the subject's non-driver identification from the Dept. of Motor Vehicles. (DMV) Deon Leftenant's identification showed an address of 7 Tippin Drive. As shown below, however, that is not the address he gave to DMV. A copy of the police report is attached as Exhibit R to the complaint.

In November, 2013, at one of the hearing dates, a police witness testified that, on October 7, 2012, an unnamed individual was given a summons for smoking marijuana in an automobile near 7 Tippin Drive. According to the police report the woman stated that she had purchased the substance from "Deon." No last name was given. The police witness testified that his partner saw Deon Leftenant come out of 7 Tippin Drive that night, and questioned him. The partner never appeared at the hearing. No arrest was made, no one entered 7 Tippin Drive. No claim

was made that Deon Leftenant was even searched at that time. The substance of the conversation was never reported by the police witness. Deon Leftenant, however, when he testified, denied that he had ever sold marijuana to the woman, and testified that he had spoken with a police officer, but was never arrested.

Both Sheldon and Deon Leftenant had N.Y.S. identification cards that showed an address of 7 Tippin Drive. Sheldon Leftenant's card was issued on June 3, 2010, at a time when he was clearly residing at the address and reported as living there. (Exhibit C, K attached to complaint)

Deon Leftenant's identification card was issued on October 18, 2011. It shows an address of 7 Tippin Drive. (Exhibit L attached to complaint). Found in defendant's files, and attached to the complaint as Exhibit L, is the application to the New York State Dept. of Motor Vehicles made by Deon Leftenant on October 18, 2011. This document was identified by Deon Leftenant at the hearing. It shows a mailing address of 7 Tippin Drive. The presence of this mailing address on the document was noted by the hearing officer in his summary of the hearing date, October 2, 2013. Inexplicably, what he fails to even take note of, is that the same Motor Vehicles document states that Deon reports that his home address had changed to 17 Bay Bright Drive, Shirley, New York. Deon L. had testified, on July 10, 2014, that, despite this application, he was issued a non-driver identification card with 7 Tippin Drive as the address. It was these cards, one issued to Sheldon Leftenant at a time when he was lawfully residing at 7 Tippin Drive, on June 3, 2010, and one issued to Deon Leftenant, on October 18, 2011, despite his application giving a new home address, that the two produced when questioned by police.

It was never claimed by defendants that Emmanuel DeGraffe ever stated that his brothers were residing at 7 Tippin Drive, after they moved from the residence in January, 2011. It was never claimed that plaintiff was ever a gang member, never claimed that he had been arrested for

criminal activity. The witnesses who were the mandated reporters to which reference has been made, included a worker for the Suffolk County Dept. of Social Services who investigated the home during 2012 as part of plaintiff's successful petition to gain custody of younger siblings following the death of his mother in November, 2011.

Two other witnesses were employed by SCO, a social services agency that worked with the DeGraffe family beginning in May, 2011 through December, 2012, and who both testified and offered multiple pages of minutely detailed notes, detailing every phone call, every visit to 7 Tippin Drive, some announced beforehand and some unannounced, every interaction with plaintiff and those found at the premises, never once mentioning the presence of Deon or Sheldon Leftenant at 7 Tippin Drive. These two witnesses, Victoria Oberst and Jason Eggers, both stated that they were mandated reporters, obligated by law to report the presence of Deon or Sheldon Leftenant if either had been found at the premises. Not once, in the pages of notes, is the name of either Deon or Sheldon Leftenant mentioned. Further, Victoria Oberst testified that when leaving 7 Tippin Drive in November, 2011, she was stopped by police who inquired about her presence there. During the course of her conversation with the police, she asked whether plaintiff was involved in any gang activity and was told that he was not. Copies of the SCO reports are attached to the complaint as Exhibit P.

In cross examination of Jason Eggers by counsel for defendants, Mr Eggers testified that he was not at the premises after 6 p.m. or on weekends. However, Mr. Eggers did not assume responsibility for the case until December, 2011, at which time Sheldon Leftenant was in jail where he remained until February, 2013, at which time SCO had no further contact with the family. Both Sheldon and Deon Leftenant testified at the hearing that they visited their mother, who died in November, 2011, on weekends. However, even if Deon Leftenant was at the

-9-

premises during 2012 at a time when Mr. Eggers was not there to see him, it remains that he was never seen during any daytime visit, never mentioned in conversations with the residents who were present. The Administrative Plan of defendants, as defendants have stated in other matters, considers a person to be a resident of a premises when that person is at a premises for 14 consecutive days or 30 days in a calendar year, Defendants never ever attempted to establish this with regard to either Sheldon or Deon Leftanant and there is no evidence that they met this requirement.

Other exhibits unmentioned by the hearing officer, came from the files of defendants and stated that, because Deon and Sheldon and others, had moved from the premises, Gabriella DeGraffe would have to "downsize," that is, move to smaller quarters. These documents, dated May 18, 2011, are attached to the complaint as Exhibit I. At this time, Gabriella DeGraffe was so ill that she died a few months later. Yet, she never changed her statement that Deon and Sheldon had moved.

Against the backdrop of this testimony, and the exhibits to which reference has been made, the decision of the hearing officer should be addressed. That decision contained the following language:

> "In considering this decision the Hearing Officer has had to make a determination as to whether Sheldon Leftanant and Deon Leftanant did or did not in fact reside at 7 Tippen Drive on an on-going basis or occasionally. Second, were Sheldon Leftanant and Deon Leftanant engaged in criminal activity which may or may not been [sic] gang related.
>
> Documents were submitted indicating that Sheldon and Deon did not reside at 7 Tippen Drive. However, two significant points and key to this matter are police reports, submitted into evidence. All of the police reports clearly state that the addresses for Sheldon and Deon was [sic] 7 Tippen Drive. This information was given to the officers as stated in their testimonies at the hearing. No report ever listed any other address for them. If this was not their residence then why did they not give the address of where they were

-10-

actually living?  Also, 7 Tippen Drive was listed in at least half of the arrests/
interview reports as the Location of the arrest/interview."

Secondly, the Police Officers and Detectives have stated that Sheldon and Deon
were known to be affiliated with a gang through their contacts, documentation in
the police files and surveillance.  Emmanuel said that he did not know if his
brothers were members of a gang, however, he felt the information the police
gave was true in that while they may not have been directly involved in
criminal activity, they were probably around it.  It seems it would be hard for him
not to know with whom and with what organizations his brothers were affiliated
with based on the activity that took place around 7 Tippen Drive.

Based on the number of police reports regarding arrests/interviews it would be
hard to believe that they were not just around criminal activity but to some degree
also involved in criminal [*sic*].  The fact that the police indicated in their
testimonies that they have seen Sheldon and Deon at 7 Tippen Drive regularly
would also indicate that they were at the house regularly."

The hearing officer does not identify the "police reports" to which he is referring.

The greater number of the reports relate to a time period when the brothers were clearly residing

at 7 Tippin Drive and reported as doing so.  As stated, the identification cards carried by each of

these brothers list 7 Tippin Drive as their address, one issued to Sheldon when he was living at

7 Tippin Drive and reported to be part of the household composition, and one issued to Deon

despite his listing a new home address on his application.  And, being "at the house regularly,"

as the hearing officer writes, is not a violation of the regulations, even if was accurate.

Further, the conclusion of the hearing officer flies in the face of all the contradictory

evidence of the brothers' residence.  Aside from the weight of the evidence, what is equally

troubling is that the hearing officer fails to even mention or to comment on the contradictory

evidence, and his decision is based upon, not police investigation, but on police claims that 7

Tippin Drive is the address given by Sheldon and Deon Leftenant when questioned.

Consequently, defendants are in the anomalous position of claiming that the brothers were lying

when they testified at the hearing on July 10, 2014, denying they lived with plaintiff, but truthful

-11-

if they, in fact, did give the police the address of 7 Tippin Drive, after they were said to have moved from there.  Wholly unmentioned is the possibility that, if the recollection of the police regarding conversations had a year and one half earlier is correct, and not based upon the identification cards, the brothers might not have wanted to disclose their actual address to police. It must be reiterated that there was never any investigation conducted by police, or anyone else on behalf of defendants, such as a housing inspector,  to determine the address of Sheldon or Deon.  They were seen at 7 Tippin Drive at various times, their identification cards showed the 7 Tippin Drive address, but all of the witnesses who actually entered the house, and the application for an identification card by Deon L, established that there was no evidence that the brothers resided at 7 Tippin Drive at a time when they should not have.

In fact, it appears that the hearing officer paid so little attention to the plaintiff's witnesses that he states that the notes of a Dept. of Social Services worker, Denise Guido, were offered in evidence.  (Exhibit U attached to the complaint; hearing officer summary of hearing date, March 14, 2014) He identifies these notes as respondent's Exhibits 23 and 24 at the hearing.  In fact, Ms. Guido's notes were not offered, only reviewed by defendants' counsel (Complaint, paragraphs 30, 31) and the Exhibits to which he refers to at the hearing, 23 and 24, were the final custody order, ( Exhibit O attached to the complaint) and the photograph of Sheldon and Deon Leftenant shown to plaintiff's witnesses.  The notes which were offered at the hearing, and are attached to the complaint as Exhibit P, are the notes of the extensive contacts with plaintiff and his family by the SCO workers, Victoria Oberst and Jason Eggers.  The hearing officer makes no mention of them in his decision.

With regard to Sheldon Leftenant, the only specific date he was seen at the house, after he moved in January, 2011, was on November 28, the date of his arrest, when he was there for the

planning of his mother's funeral.  With regard to Deon Leftenant, the only specific date police

said they saw him at 7 Tippin Drive, after January, 2011, was on October 7,, 2012, when he was

questioned after a defendant claimed she had purchased marijuana from a person named "Deon."

　　　　The hearing officer fails to comment on the inconsistencies presented, fails to discuss at

all the contrary evidence, fails to even decide whether, as he put it, the brothers lived at 7 Tippin

Drive "on an on-going basis or occasionally."  Where in his decision does he ever determine

when Sheldon and Deon Leftenant resided at 7 Tippin Drive?  Where in his decision does he

make any attempt to explain why, during the time period from October 21, 2011 through

October, 2012, witnesses with no stake in the outcome, entered the premises on numerous

occasions, announced and unannounced, and found no evidence that the brothers were residing

there?  Does he bother to examine or explain why Deon Leftenant would apply for a non-driver

identification card from DMV in October, 2011, and report that his home address had changed

from 7 Tippin Drive to 17 Bay Bright Drive in Shirley?

　　　　With regard to gang membership, and "the activity that took place around 7 Tippin Drive,

the question must be asked, what activity?  Sheldon Leftenant was arrested at the address on

November 28, 2011, for a crime that occurred at a location nowhere near 7 Tippin Drive, and

an unnamed defendant claimed, on October 7, 2012, that a person named "Deon" had sold her

marijuana.  Deon Leftenant was questioned by police that evening, never searched, never

arrested, the house never entered.  The other police reports related to clothing worn by the

brothers at a time before they moved from 7 Tippin Drive, which the police claimed was

affiliated with gang membership, and to statements alleged to have been made by the brothers

affirming gang membership.  How is this attributable to plaintiff?

　　　　In the seminal case on the issue of due process rights afforded those dependent on

assistance from the government, *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court enunciated rules required in pre-termination hearings such as the one afforded to plaintiff. With regard to the decision of the fact finder, the Court stated, at page 271:

> "Finally, the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. [citations omitted] To demonstrate compliance with this elementary requirement, the decisionmaker should state the reasons for his determination and indicate the evidence he relied on, [citation omitted] though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law. And, of course, an impartial decision-maker is essential. [citations omitted]."

In *Escalera v. New York City Housing Authority*, 425 F.2d 853 (2d Cir., 1970), a class of public housing tenants sued the housing authority over procedures employed by the authority in terminating tenancies for undesirability, in finding that tenants had violated rules and regulations and in assessing additional rent. Defendant housing authority had moved to dismiss the complaint for failure to state a claim. With regard to the contents of the decision after hearing, the *Escalera* Court stated, at page 862:

> "The decision must be based solely on the evidence adduced at the hearing. [citation omitted] Although it is unnecessary to write a full judicial opinion, the HA should 'demonstrate compliance with this elementary requirement' and 'state the reasons for (its) determination and indicate the evidence (it) relied on.' [citations omitted]"

Here, the hearing officer, other than listing the exhibit numbers of plaintiff's exhibits at the administrative hearing, fails to discuss what those exhibits contained. While in his summary of the individual hearing dates, he mentions the witnesses who were subpoenaed by plaintiff, no mention of their testimony is found in the decision.

The federal statute, quoted in paragraph 63 of the complaint, 42 U.S.C. Section 1437 (d) (k), requires that the participant "be entitled to receive a written decision by the public housing

-14-

agency on the proposed action."

The federal regulations governing the Section 8 Program provide at 24 C.F.R. Section 982.555 (e) (6) that "the person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision.  Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing...."

This Court, in a matter cited above, *Lawrence v. Town of Brookhaven Department of Housing, Community Development & Intergovernmental Affairs,* 2007 WL 2591845 (E.D.N.Y.), at page 15, discussed the standard for a decision in a Section 8 voucher termination hearing:

> "The Court finds helpful the explanation provided by HUD in its Final Rule concerning requirements of a termination hearing.  In rejecting a rule that would require the hearing officer to include both legal and evidentiary grounds for the decision, HUD explained that
>
> [t]he statement of the decision required by the regulation tells the participant what was decided, and the reasons for the decision.  A requirement for a legalistic statement of evidentiary and legal grounds for the decision would add little of [sic] benefit to the participant.  The character of the decision is not more informative or comforting to the participant when stated as an enumeration of 'evidentiary' and 'legal' grounds.
>
> The statement of decision required by the regulation must be truly informative as to the reasons for the decision.  This would include a short statement of fact or law on which the decision is actually based.  A bare and conclusory statement of the hearing decision that does not let the participant know the basic reasons for the decision will not satisfy the regulatory requirement.
>
> Section 8 Housing Assistance Payments Program; Existing Housing, 49 Fed. Reg. 12215, 12230 (March 29, 1984) ("HUD Final Rule")."

With regard to the content of the decision, this Court in *Boykins v. Community Development Corp. of Long Island,* 2011 WL 1059183 (E.D.N.Y.) held that a Section 8 termination decision, devoid of sufficient factual basis, violated a participant's right to

procedural due process, and survived a motion to dismiss, under the Supreme Court decision

in *Goldberg v. Kelly,* (397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 [1970]).  The *Boykins* Court

held, at page 4:

> "....Ms. Boykins has set forth a claim that Ms. Kleo, and thus the CDC, violated
> procedural due process by not meeting *Goldberg's* first requirement: that the decision
> state the 'reasons' for the determination reached.  *See* 397 U.S. at 271"

It is the position of plaintiff that the decision fails in two regards: one, the hearing officer,

aside from mentioning that contradictory evidence exists, fails to discuss its import at all, fails to

discuss whether he gave it any credence at all.  He even fails, in his decision for defendants , to

state when the brothers were residing at 7 Tippin Drive which is the entire basis for the

termination.  If they were not residing there, then any criminal activity attributed to them is

unconnected to plaintiff's address.  In fact, the hearing officer never even explicitly states that the

brothers were residing at 7 Tippin Drive.  In the final paragraph of his decision, he writes that

while plaintiff testified that his brothers did not live at 7 Tippin Drive, "the police reports do cast

doubt and call into question that possibility."  What does that mean?

Secondly, the main basis for the hearing officer's conclusion is statements attributed to

Sheldon and Deon Leftenant that they resided at 7 Tippin Drive, not the result of any

investigation, or any showing that their personal effects were found there, not based

upon any admission by plaintiff that they resided there.  Weighed against this is the overwhelming

evidence that they did not reside at 7 Tippin Drive.  Thus, there was not substantial evidence that

plaintiff had failed to list them as members of his household.

With regard to the standards to be applied at an administrative hearing and the deference

to be given to the decision of a hearing officer, the Fourth Circuit Court of Appeals in *Clark v.*

*Alexander*, 85 F.3d 146 (1996) discussed these issues.  It first held that the Administrative

Procedure Act did not apply to housing authorities (p. 151). It further found, at page 150:

> "The Supreme Court has held that violation of federal housing laws by state agencies implementing these laws are actionable under section 1983 by Section 8 participants." [citations omitted]

It held further, on pages 151-52:

> "The level of deference shown to the factfindings of a hearing officer is not absolute but it is significant. The regulations governing hearings state that factual findings must be 'based on a preponderance of the evidence presented at the hearing.' [citations omitted]....*accord Goldberg,* 397 U.S. at 271, 90 S.Ct. At 1022 ('the decisionmaker's conclusions must rest solely on the legal rules and evidence adduced at the hearing'). Accordingly, to insure compliance with federal law, the reviewing court must be satisfied that the hearing officer's conclusions are supported by substantial evidence." [citation omitted]

In defining "substantial evidence," the Supreme Court in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 28 L.Ed.2d 842, stated that it was:

> " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " [citation omitted]

This Court, in *Rivera v. Town of Huntington Housing Authority, et al.,* 2012 WL 1933767 (E.D.N.Y.), quoted from *Clark,* above, in granting the plaintiff in *Rivera* a preliminary injunction.

The *Rivera* Court stated, at page 11"

> "While '[t]he Second Circuit has not yet articulated a clear standard for the level of deference a district court show an agency's factfinding when terminating public housing assistance,' at least one court within the Circuit has adopted the standard set forth by the Fourth Circuit in *Clark v. Alexander*...See *Boykins v. Cmty. Dev. Corp. of Long Island,* 2011 WL 1059183 at *5 (E.D.N.Y. Mar. 21, 2011)"

The *Rivera* Court dealt with an issue involving the same Housing Authority. In that case, a family faced termination because the daughter of the voucher holder had been arrested for possession of cocaine. On page 12 of the decision, Judge Hurley found the following:

"First, the fact that plaintiff was arrested and that the charges remained pending as of the hearing date does not evidence that she possessed cocaine. Moreover, Cristal's testimony does not constitute substantial evidence to support the Hearing Officer's determination that the substance found in Cristal's purse was, in fact, cocaine. It is well-established that 'agencies can use hearsay evidence to meet their evidentiary burden.' [citations omitted] But, even if accepted for the truth of the matter asserted, Cristal's testimony evidences only that an individual, presumed to be an unidentified police officer, told her-moments before her arrest-that a substance found in her purse was cocaine. There is no indication as to the basis for this individual's statement to Cristal (i.e., field tests of the substance, the individual's training or on-the-job experience)....Finally, Cristal never admitted to possessing cocaine, and even in connection with her subsequent guilty plea to a charge of disorderly conduct, she never allocuted to possession of a controlled substance.
....
Thus, the Court concludes that this determination was not supported by substantial evidence, and, accordingly, it is not entitled to deference. Overall, the record evidence did not establish by a preponderance of the evidence that Cristal engaged in "criminal activity in connection with the April 26, 2011 incident....Thus, plaintiff has shown a clear or substantial likelihood of success on the merits of her due process challenge to the sufficiency of her pre-termination hearing."

In *Gammons v. Massachusetts Department of Housing and Community Development,* 523

F. Supp.2d 76 (U.S.D.C., D. Mass., 2007), the question was raised, whether a Section 8

participant could maintain a Section 1983 action based upon the lack of a preponderance of the

evidence, or whether the participant was relegated to suit under state law.  There, the plaintiff

Section 8 participant lost a hearing based upon the alleged presence of her husband in the home

and a claim of fraud. (*Id.* At pages 78-9)   Plaintiff sued defendants in Federal Court, claiming a

remedy pursuant to 42 U.S.C. Section 1983.  The Court stated, at pages 81-82:

"The threshold question is whether the plaintiffs have an enforceable right under Sec. 1983 not to have their Section 8 benefits improperly terminated in contravention of HUD regulations.  Defendants insist that if plaintiffs wish to challenge the termination decision...they must seek judicial review under state law. This turns out to be a complex and difficult question of federal law."

The Court discussed the Supreme Court's holding in Wright, *supra,* and the 4th Circuit's

decision in *Clark, supra,* upholding the right to Section 1983 relief when it is alleged that HUD

regulations implementing statutory authority have been violated. However, the Court

acknowledged that not all of the regulations were so actionable when not supported by a statutory

provision. (*Id.,* at pages 82-83). The Court discussed the same provisions of the United States

Housing Act at issue here, 42 U.S.C. Section 1437 d (k), the requirements of which are recited in

paragraph 63 of the complaint. The Court proceeded to hold, at page 84:

> "As such, defendants argue that Section 1983 only provides a cause of
> action where the agencies failed to provide procedures consistent with the
> statute, regulations and due process clause, and contend that there is no cause
> of action under federal law where the challenge is to the sufficiency of the
> evidence supporting the decision to terminate a Section 8 subsidy. Plaintiffs
> contend otherwise. Supreme Court caselaw does not plainly answer this dispute.
> While the Supreme Court has clarified that a federal right must be 'unambiguously
> conferred' by Congress to support a Section 1983 action, *Gonzaga,* 536 U.S. at
> 283,122 S.Ct. 2268, it nonetheless expressly reconfirmed the holding in *Wright*
> that the HUD statute at issue in that case, when interpreted by implementing
> regulations, created an enforceable right. *See Id.* at 289, 122 S.Ct. 2268."

Of course, here, plaintiff asserts that defendants have "failed to provide procedures

consistent with the statute, regulations and due process clause." However, further, that the

decision of the hearing officer was totally devoid of substantial evidence. The *Gammons* Court

continued, at page 84:

> "As mentioned earlier, 42 U.S.C. Sec. 1437 d (k) mandates the creation of
> procedural rights for tenants faced with adverse action. The language of the statute
> unambiguously confers rights for the benefit of Section 8 subsidy recipients. One of
> these rights includes being 'entitled to receive a *written decision* by the public housing
> agency on the proposed action.' 42 U.S.C. Sec.1437 d (k) (6) (emphasis added). The
> HUD regulations clarify what constitutes a proper written decision by specifying that
> a hearing officer must 'stat[e] briefly the reasons for the decision,' and that '[f]actual
> determinations *shall* be based upon a preponderance of the evidence presented at the
> hearing.' 24 C.F.R. Sec. 982.555 (e) (6). (emphasis added). Accordingly, I conclude
> that a tenant who claims her Section 8 benefits have been arbitrarily terminated
> because a hearing officer's decision is not based on a preponderance of the evidence
> presented at the hearing sufficiently states a claim under Section 1983."

The Circuits have been split with regard to the issue of whether a regulation by itself

–19–

creates a right enforceable by 42 U.S.C. Section 1983. But, even those Circuits that do not hold

that a regulation alone may provide a basis for 1983 enforcement, have agreed that a regulation

may provide an interpretation of the statute and the statute may create a right enforceable by

Section 1983. Thus, in *Save Our Valley v. Sound Transit, et al.,* 335 F.3d 932, (C.A. 9th Circ.,

2003), the Court stated, at pages 939-40:

> "The mere fact that the *Wright* Court permitted a plaintiff to maintain a
> Sec 1983 suit for violation of the regulations does not necessarily mean the
> regulations *created* the claimed right. Rather, it seems that the Court understood
> that the statute, rather than the HUD regulations, created the right. The Court
> looked to the regulations only to interpret the scope of the right that Congress had
> conferred through the statute. This conclusion is evident in the Court's focus on
> Congress's intent in enacting the statute, rather than the agency intent in promulgating
> the regulations. The Court referred to 'the benefits *Congress* intended to confer on
> tenants.'....It also stated that 'HUD's view is entitled to deference as a valid
> *interpretation* of the statute.' " (emphasis in original)

With regard to the statute at issue here, 42 U.S.C. Section 1437 (d) (k), Courts have

held that it creates a right enforceable under Sec. 1983. In *Sager v. Housing Commission of*

*Anne Arundel County,* 855 F. Supp.2d 524, (D. Maryland, 2012), the Court wrote at pages

562-63:

> "As noted, courts have held that tenants have a right enforceable under
> 42 U.S.C. Sec. 1983 to grievance hearings that are conducted in accordance
> with the Housing Act and its implementing regulations. (citations omitted)"

In *Davis v. The City of New York*, 902 F.Supp.2d 405 (S.D.N.Y., 2012), the District Court

stated, at pages 440-41

> "The preceding subsection of the law, section 1437 d (k), which plaintiffs
> do not invoke, provides detailed administrative grievance protections to which
> tenants are entitled when a housing agency seeks to take adverse action against
> them. Multiple courts have held that subsection 1437 d (k) unambiguously
> confers enforceable rights. Both subsections 1437 d (k) and 1427 d (l) were
> enacted by Congress in 1983 as part of a supplementary appropriations bill in a
> section entitled 'Lease and Grievance Procedures.' " (footnotes omitted)

The question further arises regarding the use of hearsay at an administrative hearing. The federal regulation governing the conduct of Section 8 hearings, at 24 C.F.R. Section 982.555 (e) (5), is quoted at paragraph 60 of the complaint, but, in sum, states that hearsay evidence is allowed.

Regarding the use of hearsay at a hearing, the 11th Circuit in *Basco v. Machin,* (514 F.3d 1177 [11th Cir., 2008]) dealt with the issue. There, a Section 8 participant was terminated based upon a claim that she had an "unauthorized resident" in the premises. The regulation at issue was 24 C.F.R. Section 982.551 (h) (2). The Administrative Plan of the Section 8 Program in *Basco* provided that the "burden of proof that an individual is a visitor rests on the family." (Id., at page 1179) There were two police reports involved there. Both reports indicated that a person not on the lease had an address the same as the subsidized unit, although the first name of that person, a Mr. Jones, was different in the two reports. One of the reports also contained a statement attributed to one of the named lessees that gave the assisted address as that of this person. Since the two reports were several months apart, the defendant argued that the unauthorized Mr. Jones resided at the unit.

The Section 8 agency sent to plaintiff a notice to terminate together with copies of the two reports. At the hearing, the only evidence presented on behalf of the housing agency was the two police reports. Plaintiff and her landlord testified that Mr. Jones, the alleged occupant, did not reside at the premises. Plaintiff also submitted a notarized statement from Mr. Jones' mother stating the addresses at which he had resided, neither of which was the subsidized unit.

Plaintiff lost the hearing and brought suit alleging a deprivation of due process and a remedy under 42 U.S.C. Section 1983. The Circuit Court was asked to resolve the issue of the burden of persuasion at an administrative hearing and the issue of hearsay at a hearing. With

–21–

regard to the first issue, the Court stated, at page 1182:

> "...the PHA has the burden of persuasion and must initially present sufficient evidence to establish a prima facie case that an unauthorized individual "has been in the unit more than 15 consecutive days without PHA approval, or a total of 30 days in a 12 month period." Thereafter, the Section 8 participant has the burden of production to show 'that the individual is a visitor.'"

With regard to the Section 8 submission of two unauthenticated police reports, the Circuit Court held that, although the rules of evidence are not strictly applied in hearings such as these:

> "...there are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence...,'hearsay may constitute substantial evidence in administrative proceedings as long as factors that assure 'the underlying reliability and probative value' of the evidence are present. [citation omitted] The reliability and probative value of such evidence depends on 'whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.' *J.A.M. Builders, Inc. v. Herman*, 233 F/3d 1350, 1354 (11th Cir. 2000) (citing *U.S. Pipe & Foundry Co.,* 595 F.2d at 270 (citing *Richardson v. Perales,* 402 U.S. 389, 402-06, 91 S.Ct.1420, 28 L.Ed.2d 842 (1970)))."

The Court held that, even if the two police reports and statements were properly admitted, they did not establish that the two Mr. Jones named were the same person, or that he had resided at the unit beyond the proscribed period of time. (Id., at page 1184).

The point to be made here is that the defendants' case is based upon police reports that Deon Leftenant, in February, 2012, claimed he resided at 7 Tippin Drive. This is the only statement attributed to Deon Leftenant after the date defendants claim that plaintiff was responsible for reporting the household composition. Further in the hearing officer's report of the testimony of October 2, 2013, he states, with regard to the arrest of Sheldon Leftenant on November 28, 2011, that the police officer "says that they decide he lives at that address when the person says so." The implication is that Sheldon Leftenant told the police he resided at 7 Tippin

-22-

Drive.  On these thinnest of reeds, defendants' case relies.  The statements attributed to the Leftenant brothers are hearsay, but clearly allowable under the Section 8 regulations.  However, when they testified on July 10, 2014, they both denied that they resided at 7 Tippin Drive after January, 2011, and denied making those statements to the police.

In their arguments to the hearing officer, defendants claim that Sheldon and Deon Leftenant were not credible, not to be believed when they denied living at 7 Tippin Drive after October 21, 2011.  Yet, in the same breath, they must claim that the brothers, not only told police they lived at the address when questioned, but that those statements were truthful.  Thus, liars when their testimony hurt defendants' case, and honest men when it helped.  The burden is on defendants to establish their case by a preponderance of the evidence.  As stated, the police conducted no investigation to determine where Deon and Sheldon resided, their identification cards, issued as set forth above, gave an address of 7 Tippin Drive, but were not issued at a time when plaintiff was, in defendants' eyes, responsible, and, in the case of Deon, issued despite his reporting that he no longer lived at 7 Tippin Drive.

Defendants have deprived plaintiff and his family of their property right in a Section 8 voucher in violation of the law.  Plaintiff has established his right to a preliminary injunction reinstating his subsidy immediately,  and respectfully ask this Court to grant this motion.

## CONCLUSION

By reason of the foregoing, plaintiff respectfully requests that this motion for a preliminary injunction be granted, together with such other and further relief as to the Court may seem just.

Dated: July 6, 2015

Victor J. Ambrose
(631) 232 2400 x 3314

–23–