UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X    For Online Publication Only
EMMANUEL DEGRAFFE,

                Plaintiff,

               v.    **MEMORANDUM AND ORDER**
                                                                                      13–CV–3939 (JMA) (ARL)
TOWN OF HUNTINGTON HOUSING
AUTHORITY, and SIELA A. BYNOE, *in her
capacity as Executive Director of the Town of
Huntington Housing Authority*,

                Defendants.
----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

       Before the Court is plaintiff Emmanuel DeGraffe's motion for a preliminary injunction. DeGraffe's suit challenges the termination of his Section 8 housing subsidy by defendant Town of Huntington Housing Authority ("HHA"). DeGraffe seeks a preliminary injunction that would restore his Section 8 subsidy. For the reasons that follow, DeGraffe's motion is denied.

                                 **I.      BACKGROUND**

       DeGraffe's family has participated in the Section 8 housing program for over fifteen years. HHA requires a Section 8 participant to complete annual recertification paperwork, including a personal declaration that must list all of the persons "living" in the participant's home. On October 21, 2011, DeGraffe and his mother, Gabriella DeGraffe, both signed a personal declaration that listed the two of them as the only adults in their house at 7 Tippin Drive, Huntington Station, New York.[1] The declaration also states that the declarants must inform HHA about any changes to the composition of the household.

---

[1] DeGraffe's mother signed the declaration as the "Head of Household." (Oct. 21, 2011 Decl.) DeGraffe signed it under the heading "Other Adult." (Id.) DeGraffe's mother passed away on November 23, 2011.

1

In March 2012, HHA sent DeGraffe a termination notice, informing him that HHA was terminating his Section 8 assistance because DeGraffe's October 21, 2011 declaration failed to list three individuals who were living at 7 Tippin. The alleged undisclosed occupants were Sheldon Leftenant ("Sheldon"), Deon Leftenant ("Deon"), and Marcus Ellis. Sheldon and Deon are DeGraffe's half-brothers. The termination notice alleged that Sheldon lived at 7 Tippin "during various periods" from June 3, 2010 through November 28, 2011 and Deon lived there "during various periods" from June 30, 2011 through February 23, 2012.[2]

Under regulations promulgated by the Department of Housing and Urban Development ("HUD") that govern the Section 8 program, a family participating in Section 8 must supply "true and complete information," must not commit fraud in connection with the Section 8 program, and must request approval of the local housing authority to add additional any non-approved family members as occupants to the house. 24 C.F.R. § 982.551(b)(4); 24 C.F.R. § 982.551(h)(2); 24 C.F.R. § 982.551(k). Under HHA's rules, a person qualifies as a resident of a house if he resides at the house for 14 consecutive days or 30 days in a calendar year. (Pl.'s Mem. at 10.)

In addition to citing DeGraffe's failure to list the three undisclosed occupants, the March 2012 notice also stated that termination was warranted because the three undisclosed occupants were members of a gang, the "Tip Top Boys," and had engaged in criminal activity. According to HUD regulations, "members of the household may not engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." 24 C.F.R. § 982.551(l).

DeGraffe contested the termination and invoked his right to an informal hearing, which

---

[2] The termination notice was later amended to indicate that Deon resided at 7 Tippin through October 12, 2012.

was held before Hearing Officer Jamie Morrison. Between March 5, 2013 and July 10, 2014, Morrison presided over six days of hearings. The hearings focused on: (1) whether Sheldon and Deon were residents of 7 Tippin when DeGraffe signed the personal declaration; and (2) whether Sheldon and Deon were gang members and engaged in criminal activity. HHA did not pursue its earlier allegation that Ellis also resided at 7 Tippin.

At the hearing, DeGraffe insisted that Sheldon and Deon moved out of 7 Tippin in January 2011 to live with their father. DeGraffe, Sheldon, and Deon all testified to that effect. Although Deon and Sheldon continued to visit 7 Tippin after January 2011, they maintained that they never spent the night.[3] At the hearing, DeGraffe also offered the testimony and records of social workers who made numerous announced and unannounced daytime visits to 7 Tippin. The social workers testified that they did not see Deon or Sheldon at the house—that testimony was consistent with the social worker's notes about their interactions with the DeGraffe family. DeGraffe also introduced other documentary evidence—including a letter from Gabriella DeGraffe to HHA and an affidavit from the father of Sheldon and Deon—which indicated that Sheldon and Deon had moved out in January 2011.

At the hearing, HHA relied on police reports that listed the addresses of Sheldon and Deon as 7 Tippin. A number of police officers also testified about their interactions with Sheldon and Deon. Some of these police reports and encounters pre-dated January 2011—when Sheldon and Deon allegedly moved out of 7 Tippin. However, at least four of these incidents occurred after January 2011. First, the police interviewed Deon on June 30, 2011. The police report memorializing the June 30, 2011 interview lists 7 Tippin as Deon's address. Second, the police interviewed Deon again on October 7, 2011; the accompanying police report also lists 7

---

[3] Sheldon was incarcerated between March 2011 and July 2011 and was again incarcerated from November 28, 2011 until February 2013.

3

Tippin as his address. And, at the hearing, officers testified that during that interview, Deon could not provide identification, but verbally gave his address as 7 Tippin. Third, an officer's notes and a report from a February 2012 traffic stop, in which Deon was a passenger in the car, list Deon's address as 7 Tippin. The officer who conducted that stop also "testified that [during the stop, Deon] stated that he lived at 7 Tippin." (Pl.'s Mem. at 7.) Fourth, on November 28, 2011, five days after Gabriella DeGraffe's death, Sheldon was arrested outside of 7 Tippin; the accompanying report lists 7 Tippin as his address. At the hearing, Sheldon and Deon denied giving 7 Tippin as their address during these encounters with police.

In addition to the incidents above, police officers also saw Deon and Sheldon at 7 Tippin on various occasions after January 2011. However, none of the police officers who testified had been inside the house at 7 Tippin. Furthermore, HHA did not conduct any investigation or inspection inside the home.

As to the alleged criminal activity of Deon and Sheldon, HHA offered evidence that: (1) Sheldon was arrested for gang assault in November 2011, pled guilty to criminal facilitation, and was incarcerated until February 2013; (2) an individual arrested in October 2012 for marijuana possession reported to the police that "Deon" had sold her the marijuana; and (3) both Sheldon and Deon were members of the "Tip Top Boyz" gang. At the hearing, Deon denied selling the marijuana and both brothers denied the alleged gang membership.

After the hearings were complete, Morrison issued a three-page decision upholding the termination of DeGraffe's Section 8 subsidy. Along with his decision, Morrison included summaries of the evidence and testimony from each hearing day.

Shortly after HHA terminated his Section 8 subsidy, DeGraffe filed the instant suit and preliminary injunction motion that seeks reinstatement of his subsidy.

4

## II.     DISCUSSION

Proceeding under 42 U.S.C. § 1983, plaintiff challenges Morrison's decision on two grounds.  First, plaintiff alleges that Morrison's decision violated his due process and statutory rights because the decision failed to adequately state the reasons for the termination.  Second, plaintiff argues that Morrison's decision was improper because it was not supported by substantial evidence.  Defendant disputes these points and also argues that, as a threshold matter, plaintiff's claims are not actionable under Section 1983, and must, instead, be raised in an Article 78 proceeding in state court.  For the reasons stated below, the Court finds that plaintiff has not established a clear likelihood of success on his substantial evidence challenge or his claim that Morrison's decision failed to adequately state the reasons for the termination.  Accordingly, it is unnecessary to address defendant's argument that plaintiff's claims are not cognizable under Section 1983.

### A.  Standard for Preliminary Injunction

Generally, a movant seeking a preliminary injunction must establish "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in the movant's favor.  Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir. 2000).  However, where the movant seeks to enjoin "government action taken in the public interest pursuant to a statutory or regulatory scheme," the movant must show "(i) irreparable harm absent the injunction and (ii) a likelihood of success on the merits."  Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (citations omitted).  Moreover, "where the movant seeks a mandatory injunction (one that will alter the status quo) rather than a prohibitory injunction (one that maintains the status

quo), the likelihood-of-success standard is elevated: the movant must show a clear or substantial likelihood of success." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 97 (2d Cir. 2005). Because DeGraffe requests reinstatement of a Section 8 subsidy that has already been terminated, he must establish a clear or substantial likelihood of success. See Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergovernmental Affairs, No. 07-CV-2243, 2007 WL 4591845, at *7 (E.D.N.Y. Dec. 26, 2007), aff'd, 393 F. App'x 791 (2d Cir. 2010).

As explained below, DeGraffe cannot establish a clear or substantial likelihood of success. Accordingly, the Court does not reach the question of irreparable harm.

**B. Plaintiff's Claim that the Decision Did Not Adequately State Reasons for Termination**

Plaintiff argues that Morrison's decision violated due process and plaintiff's rights under the United States Housing Act and related regulations because Morrison's decision failed to adequately articulate the reasons for his decision.

The Fourteenth Amendment right to procedural due process requires hearing officers in Section 8 termination proceedings to issue written decisions that "state the reasons for [the hearing officer's] determination and indicate the evidence he relied on." Goldberg v. Kelly, 397 U.S. 254, 271 (1970); Boykins v. Cmty. Dev. Corp. of Long Island, No. 10-CV-3788, 2011 WL 1059183, at *3 (E.D.N.Y. Mar. 21, 2011). The purpose of this requirement is to ensure that the hearing officer's decision rests "solely on the [relevant] legal rules and evidence adduced at the hearing." Goldberg, 397 U.S. at 271; see also Moore v. Ross, 502 F. Supp. 543, 555-57 (S.D.N.Y. 1980) ("The major purposes of the reasons and evidence requirement are to protect against arbitrary and capricious decisions or actions grounded upon impermissible or erroneous considerations, to safeguard against a decision on ex parte evidence, and perhaps most importantly to facilitate judicial review by enabling a court to determine whether the decision

6

was based upon an impermissible reason, or no reason at all." (citations and internal marks omitted)), aff'd, 687 F.2d 604 (2d Cir. 1982). Due process does not require that the hearing officer issue a "full opinion or even formal findings of fact and conclusions of law." Goldberg, 397 U.S. at 271.

The United States Housing Act ("Housing Act"), 42 U.S.C. § 1437d(k), governs DeGraffe's Section 8 subsidy and "essentially parrots Goldberg's [due process] criteria." Rios v. Town of Huntington Hous. Auth., 853 F. Supp. 2d 330, 342 (E.D.N.Y. 2012). The Housing Act requires that the "Secretary [of HUD] shall by regulation require each [participating housing authority] . . . to establish and implement an administrative grievance procedure under which tenants will . . . [inter alia] be entitled to receive a written decision by the public housing agency on the proposed action.'" Id. (quoting 42 U.S.C. § 1437d(k)).

The regulations promulgated by HUD state that the written decision must "briefly" state "the reasons for the decision" and that "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e). When HUD adopted this regulation, it provided some additional guidance regarding this requirement, noting that:

> The statement of decision required by the regulation must be truly informative as to the reasons for the decision. This would include a short statement of the elements of fact or law on which the decision is actually based. A bare and conclusory statement of the hearing decision, that does not let the participant know the basic reasons for the decision, will not satisfy the regulatory requirement.

Section 8 Housing Assistance Payments Program; Existing Housing, 49 Fed. Reg. 12215, 12230 (March 29, 1984).

Plaintiff argues that Morrison's written decision is deficient under the Fourteenth Amendment, the Housing Act, and the accompanying regulations. The Court concludes that

7

plaintiff has not established a clear likelihood of success on these claims.[4]

Plaintiff argues that Morrison's decision is deficient because he failed to "clearly decide that Sheldon and Deon . . . were residing at 7 Tippin Drive" and failed to identify what, if any, specific period of time they resided there. (Pl.'s Reply Mem. at 5.) Relatedly, plaintiff criticizes the final paragraph of Morrison's decision, which states:

> [I]t is the determination of the Hearing Officer while Emmanuel DeGraffe has indicated that his brothers did not live at 7 Tippen[5] Drive, the police reports do cast doubt and call into question that possibility. In addition, their arrest and interview reports clearly indicate that they were involved in criminal activity and that some of it occurred at and around 7 Tippen Drive. This in itself creates a concern for the safety and well-being of the residents who live on Tippen Drive. In consideration of the individual circumstances of the family and the preponderance of the evidence presented at these hearings it is the decision of the Hearing Officer to uphold the decision of the Huntington Housing Authority to terminate the Section 8 subsidy to Emmanuel DeGraffe.

(June 1, 2015 Hearing Determination ("Morrison Determination") at 3 (emphasis added).) According to plaintiff, Morrison's statement that "the police reports do cast doubt and call into question that possibility" is simply too vague to meet the standard for a reasoned determination. Plaintiff's arguments, however, fail to consider Morrison's decision as a whole. When viewed in its entirety, Morrison's decision adequately sets forth the reasons for his ultimate conclusion that the termination should be upheld. First, Morrison's decision explicitly references the allegations in the termination notice, which gives context to the decision's ultimate conclusion to uphold HHA's termination decision. Second, early in the decision, Morrison identifies the critical question before him: "In considering this decision the Hearing Officer has had to make a determination as to whether Sheldon Leftenant and Deon Leftenant did or did not in fact reside at

---

[4] Plaintiff admits that courts are divided over whether a regulation alone can be enforced through Section 1983. It is unnecessary to resolve that question because even assuming that the relevant regulation can be enforced through Section 1983, plaintiff still cannot show a clear likelihood of success on such a claim.

[5] Morrison's decision and hearing summaries refer to "Tippin Dr." as "Tippen Dr."

8

7 Tippin Drive on an on-going basis or occasionally."[6] (Morrison Determination at 2.) Given that Morrison ultimately decided to uphold HHA's termination decision, it is clear that Morrison answered the question he posed at the outset in the affirmative.[7] Third, although Morrison did not make explicit credibility determinations (and the one sentence plaintiff seizes on is somewhat vague), Morrison's decision leaves little doubt that he credited the testimony and reports of the police officers over DeGraffe's evidence. At one point, Morrison's decision states:

> Documents were submitted indicating that Sheldon and Deon did not reside at 7 Tippen Drive. However, <u>two significant points and key to this matter</u> are the police reports, submitted into evidence. All of the police reports clearly state that the addresses for Sheldon and Deon was 7 Tippen Drive. This information was given to the officers by each individual, whenever they were questioned or interviewed by the Officers as stated in their testimonies at the hearing. No report ever listed any other address for them. If this was not their residence then why did they not give the address of where they were actually living?

(Morrison Determination at 2 (emphasis added).)

When Morrison's decision is considered in its entirety, plaintiff cannot establish a clear likelihood of success on his claims that the decision failed to satisfy due process, the Housing Act, and the relevant HUD regulations. See Moore, 502 F. Supp. at 555 ("Whether a statement is sufficiently detailed and informative to comport with minimum due process depends upon whether it satisfies the purposes [of the written decision requirement] when read in conjunction with the hearing record."); cf. Pickett v. Forest, No. 11-CV-2445, 2013 WL 267627, at *5

---

[6] Under HHA's rules, even an occasional occupant qualifies as a resident of a house if he resides at the house for 14 consecutive days or 30 days in a calendar year. (Pl.'s Mem. at 10.)

[7] Admittedly, the question Morrison posed to himself did not explicitly ask whether Deon and Sheldon were residents of 7 Tippin when DeGraffe filed his declaration on October 21, 2011. Nevertheless, other portions of Morrison's decision indicate that his inquiry was appropriately focused on whether the brothers were residents of 7 Tippin as of October 21, 2011 and dates thereafter. First, the termination notice states that when DeGraffe made his sworn October 21, 2011 declaration, "he did not disclose to [HHA] that the following persons <u>were residing in the residence</u>." (Addendum to Termination Notice ¶ 1.) Second, when Morrison's decision discusses the police reports that predated January 2011, Morrison explicitly acknowledges that Deon and Sheldon were "legal residents" of 7 Tippin when those incidents occurred in 2010. In light of this, the most reasonable interpretation of Morrison's decision is that he ultimately concluded that the brothers were improperly residing at 7 Tippin during the relevant time period in 2011 and 2012, after they both claimed to have moved out in January of 2011.

(D.S.C. Jan. 24, 2013) (upholding "bare-boned" decision stating that "[b]ased on the information presented at the hearing, there is a preponderance of evidence that [the alleged occupant] has been an unauthorized occupant in your household"). "Due Process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Id. (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961); Mathews v. Eldridge, 424 U.S. 319, 334 (1976)).

Furthermore, contrary to plaintiff's assertion, the court's decision in Boykins v. Cmty. Dev. Corp. of Long Island, No. 10-CV-3788, 2011 WL 1059183, at *3 (E.D.N.Y. Mar. 21, 2011), does not establish that Morrison's decision was deficient. In Boykins, the hearing officer's decision simply stated that she was upholding the Section 8 termination because the housing authority "demonstrate[d] by a preponderance of the evidence that Ms. Boykins did in fact violate Section 8 rules and regulations under 24 CFR 982.551 (Obligations of a participant) and CFR 982.552 (Denial or termination of assistance to family[)]." Boykins, 2011 WL 1059183, at *4. The court in Boykins refused to dismiss the plaintiff's due process claim, reasoning that the hearing officer "did not explain why she believed the [housing authority] met its evidentiary burden, or how it accomplished this task." Id. The decision in Boykins is distinguishable from Morrison's decision, which, inter alia, indicated that Morrison credited the police reports and officer testimony introduced by HHA and identified the critical question at issue.

Finally, in Boykins, the court contrasted the decision that terminated Boykins' subsidy with the unemployment insurance decisions upheld that the Second Circuit upheld in Moore v. Ross, 687 F.2d 604, 610 (2d Cir. 1982). Although the brief and "cursory" decisions in Moore were admittedly clearer than Morrison's decision here, the decisions in Moore do not necessarily

10

establish a constitutional floor. For the reasons discussed above, Morrison's decision was sufficient.

While plaintiff has not established a clear likelihood of success on his due process claim or other alleged violations here, HHA would be well-served in the future to ensure that its decisions include a clearer statement regarding the findings most critical to the matter at hand.

Finally, plaintiff contends that Morrison's decision was deficient because it failed to mention certain evidence, such as the testimony of the social workers. This argument is not persuasive. Morrison was not required to discuss specific pieces of evidence in the record. His decision states that he considered all of the documents and testimony provided at the hearing. That is sufficient. See Boykins, 2011 WL 1059183, at *4 (holding decision that indicated that hearing officer relied on "'all statements and documentation'" in the record was sufficient to satisfy Goldberg's requirement that the decision indicate the evidence relied upon). Moreover, the Court notes that most of the evidence that plaintiff argues Morrison overlooked was mentioned in the hearing summaries that Morrison appended to his decision. Thus, there is no reason to believe that Morrison did not consider this evidence.

**C. Plaintiff's Claim that Morrison's Decision Was Not Supported by Substantial Evidence**

HUD regulations require that "[f]actual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." 24 C.F.R. § 982.555(e)(6).

The Second Circuit has not addressed the appropriate standard for reviewing a hearing officer's decision to terminate Section 8 benefits. District courts, however, have followed Clark v. Alexander, 85 F.3d 146, 151–52 (4th Cir. 1996), which requires that "the reviewing court . . . be satisfied that the hearing officer's conclusions are supported by substantial evidence." See

Rivera v. Town of Huntington Hous. Auth., No. 12-CV-901, 2012 WL 1933767, at *6 (E.D.N.Y. May 29, 2012); Boykins, 2011 WL 1059183, at *5. "Substantial evidence," is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

Plaintiff challenges the sufficiency of HHA's evidence regarding the brothers' residence at 7 Tippin.[8] Plaintiff argues that, although hearsay evidence is admissible in 8 hearings, HHA's hearsay evidence regarding Deon and Sheldon's admissions of residence was simply too meager and unreliable to justify termination, particularly because the social workers never saw the brothers at the premises, HHA and the police never conducted an investigation inside the home, and HHA did not introduce evidence that any of the brothers' personal effects were found in the home. The Court disagrees—Morrison's decision regarding the brothers' residence was supported by substantial evidence.

The evidence offered by HHA was not as meager as plaintiff contends. According to plaintiff, HHA's only evidence of the brothers' residence were alleged statements from Sheldon's November 2011 arrest and a February 2012 traffic stop where Deon was the passenger in the car.

Plaintiff, however, ignores the police interviews of Deon on June 30, 2011 and October 7,

---

[8] Two points about the relevant record for plaintiff's substantial evidence claim must be noted. First, in opposing plaintiff's preliminary injunction motion, HHA submitted various pieces of evidence that were not part of the hearing record before Morrison. Plaintiff felt compelled to respond in his reply papers with additional extra-record evidence. None of that evidence has been considered here. The Court's analysis of plaintiff's substantial evidence claim focuses solely on the evidence that the parties introduced at the hearing.

Second, in order to determine what evidence was presented to Morrison during the hearing, the Court has relied on: (1) Morrison's summaries of the hearing; (2) the representations in the parties' papers about what transpired during the hearing; and (3) the various documents that were introduced at the hearing and have been provided to the Court. Generally, there is little dispute about what transpired at the hearing. Plaintiff's counsel (who attended the hearing) notes a few omissions and alleged errors in Morrison's summaries. For purposes of this motion, the Court's accepts counsel's version of events on these points. The Court notes that HHA's opposition papers included a copy of audio recordings of the hearing. Although plaintiff did not have a copy of these recordings when he filed his motion for a preliminary injunction, plaintiff has now had ample opportunity to review those recordings. Neither party, however, cites to the audio recordings. Accordingly, the Court has relied on the evidence cited above.

2011. Documents and testimony from these interviews—particularly the October 7 encounter where, according to the officers, Deon was not carrying identification and verbally gave his address as 7 Tippin—indicate that Deon continued to reside at 7 Tippin. DeGraffe implies that these interviews are irrelevant because they occurred prior to his October 21, 2011 declaration. He is mistaken. DeGraffe and his witnesses all maintained that Deon and Sheldon left 7 Tippin in January 2011. Thus, evidence that Deon was still residing at 7 Tippin in June and October 2011 threw DeGraffe's entire story about Deon and Sheldon into question. Second, if Deon resided at 7 Tippin in June 2011 and early October 2011, it would also be reasonable to infer that he continued to reside there as of October 21, 2011.

The June 2011 and October 2011 interviews are also relevant on another point. Plaintiff maintains that, after Deon and Sheldon moved out in January 2011, they never told police that they lived at 7 Tippin. Although the officers testified to the contrary, plaintiff argues that the officers likely relied solely on Sheldon and Deon's DMV identification cards, which listed 7 Tippin as their addresses, but were based on out-of-date or inaccurate address information.[9] The problem for plaintiff is that Deon's October 7, 2011 interview undercuts plaintiff's narrative that the police officers were relying solely on inaccurate ID cards to determine the brothers' addresses. Officers involved in the October 7, 2011 interview testified that Deon did not have identification on him and verbally gave his address as 7 Tippin. Moreover, Deon did not even receive his ID card until October 18, 2011, eleven days after the October 7, 2011 interview and months after the June 2011 interview. It should also be noted that even for Sheldon's November

---

[9] Although Sheldon's DMV identification card listed 7 Tippin as his address, Sheldon applied for that card in June 2010, before he allegedly moved out in January 2011. Sheldon, however, apparently never obtained an updated ID card after January 2011. Therefore, when he was arrested in November 2011, his ID card still listed 7 Tippin as his address. Deon's DMV identification card, which was issued on October 18, 2011, also listed 7 Tippin as his address. Plaintiff maintains that this was not accurate because Deon's DMV application only listed 7 Tippin as his mailing address—the application stated that Deon's home address was "17 Bay Bright Drive," which was his father's address in Shirley, New York.

13

2011 arrest and Deon's February 2012 traffic stop, there was some testimony from the relevant officers suggesting that the brothers verbally gave their addresses during these encounters.  (See Pl.'s Mem at 7, 22.)

Plaintiff also argues that, although hearsay evidence is admissible in Section 8 hearings, hearsay evidence cannot, by itself, constitute substantial evidence unless the "underlying reliability and probative value" of the hearsay evidence is assured.  (Pl.'s Mem. at 22 (quoting Basco v. Machin, 514 F.3d 1177, 1182 (11th Cir. 2008).)  In Basco, one of the few circuit decisions to address hearsay evidence in the context of Section 8 hearings, the Eleventh Circuit observed that the "reliability and probative force of [hearsay] evidence depend[s] on 'whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.'"  Basco, 514 F.3d at 1182 (quoting J.A.M. Builders, Inc. v. Herman, 233 F.3d 1350, 1354 (11th Cir. 2000)).  Plaintiff argues that because the hearsay statements at issue here were disputed by the declarants and contradicted by the other evidence in the record, those statements are not inherently reliable and, thus, cannot constitute substantial evidence.  Plaintiff's argument, however, does not account for the fact that both Sheldon and Deon testified at trial, and that there were four incidents after January 2011 where their addresses were reported to be 7 Tippin.  Thus, the instant case is not analogous to the hearsay evidence in Basco that the Eleventh Circuit ultimately found to be insufficient.  See id. at 1183 (finding hearsay evidence regarding alleged unauthorized occupant did not constitute substantial evidence where, inter alia, neither the officers or the alleged declarants testified regarding the two police encounters at issue and it was

14

not clear that the two encounters even involved the same alleged occupant); cf. Boykins, 2011 WL 1059183, at *6 ("It is well-settled that agencies can use hearsay evidence to meet their evidentiary burden. And this principle holds true in public housing cases, so long as the tenant has the opportunity to cross examine the witnesses who provided the hearsay testimony." (citations omitted)).

Given the evidence offered by HHA, plaintiff's substantial evidence claim regarding the brothers' residence fails. Undoubtedly, plaintiff raises a number of legitimate points in his favor, including the social workers' testimony, the absence of any evidence of the brothers' personal effects in the home, and the argument that, even if the police officers' testimony were credited, the brothers may have had reasons to lie about their addresses to the officers during the police encounters. These arguments, however, all ultimately go the weight of the evidence before Morrison. While Morrison could have surely decided the residency issues in DeGraffe's favor, there was, nevertheless, substantial evidence to support Morrison's decision on this issue with respect to both Deon and Sheldon.

Finally, while plaintiff focuses on the residency issue, plaintiff also argues, briefly, that there was not substantial evidence to establish the brothers' criminal activity. According to HUD regulations, "members of the household may not engage in drug-related criminal activity or violent criminal activity or other criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises." 24 C.F.R. § 982.551(l).

With respect to Sheldon, there was clearly substantial evidence to support Morrison's decision. Sheldon was arrested in November 2011 for gang assault in the first degree (and went to prison until February 2013 for criminal facilitation), stemming from a shooting that occurred

at 123 1st Ave. in Huntington Station.

As to Deon, the evidence of his alleged drug-dealing presents a close question. At the hearing, officer testimony and police records established that, in October 2012, a person who was arrested at the intersection of Tippin Drive and Lockwood Avenue for possessing marijuana told police that she bought the marijuana from "Deon." When the police went to 7 Tippin later that night, they observed Deon emerge from the house. Deon, however, was not arrested or charged with selling marijuana. In addition to this incident, both Deon and Sheldon had made statements to police that evidenced their membership in the "Tip Top Boyz" gang. The gang was allegedly involved in drugs and fighting. While this question is close, the Court finds that there was substantial evidence that Deon engaged in drug-dealing.

Moreover, even if there was not substantial evidence that Deon engaged in criminal activity, plaintiff still cannot prevail because Morrison relied on other grounds to justify the termination: (1) Deon's undisclosed residence; and (2) Sheldon's undisclosed residence and criminal activity. Either of those grounds independently justified termination. And, although Morrison did not explicitly state that each was an independent and sufficient ground for his determination, given the evidence of the brothers' gang membership and Sheldon's criminal activity, there is no reason to believe that Morrison would have reached a different determination if the violation based on Deon's criminal activity were excluded.[10]

In sum, Morrison's decision was supported by substantial evidence.

---

[10] As noted earlier, plaintiff's primary substantial evidence argument concerns the brothers' residence. Plaintiff does not argue that, if Deon's alleged criminal activity was not supported by substantial evidence, that such error, standing alone, would warrant a preliminary injunction.

## II. CONCLUSION

For the reasons stated above, plaintiff's motion for a preliminary injunction is denied.

**SO ORDERED.**

Dated: September 16, 2015
Central Islip, New York

>                        /s/     JMA
> JOAN M. AZRACK
> UNITED STATES DISTRICT JUDGE