UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
EMMANUEL DeGRAFFE,

                         Plaintiff,

                                                      MEMORANDUM OF LAW IN
                                                      OPPOSITION TO MOTION TO
                                                     DISMISS
                    -against-                        15 CV 3939
                                                    (AZRACK, J.)
TOWN OF HUNTINGTON HOUSING AUTHORITY,    (LINDSAY, M.)
SIELA A. BYNOE, in her capacity as Executive
Director of the Town of Huntington Housing Authority,
                            Defendants.
-------------------------------------------------------------------x

## TABLE OF CONTENTS

                                                                  Page

TABLE OF AUTHORITIES........................................................................ i

STATEMENT.................................................................................... 1

STANDARD OF REVIEW.......................................................................... 1

A COMPLAINT THAT STATES A CLAIM OF
A VIOLATION OF FEDERAL LAW IS
COGNIZABLE UNDER 42 U.S.C. SECTION 1983....................................... 4

THE FACTS OF THE COMPLAINT TAKEN
AS TRUE ESTABLISH A PLAUSIBLE
CLAIM FOR RELIEF...................................................................... 11

DEFENDANTS HAVE FAILED TO AFFORD
TO PLAINTIFF THE DUE PROCESS RIGHTS
TO WHICH HE WAS ENTITLED AS A
SECTION 8 PARTICIPANT............................................................... 19

CONCLUSION................................................................................ 25

TABLE OF AUTHORITIES

Page

Cases

*Ashcroft v. Iqbal,*
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)..........................................  3, 4

*Basco v. Machin,*
514 F.3d 1177 (11th Circ., 2008)................................................................  17

*Bell Atlantic Corporation v. Twombly,*
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)...........................................  2, 3, 4

*Blessing v. Freestone,*
520 U.S. 329 (1997)..................................................................................  10

*Boykins v. Community Development Corporation of Long Island,*
2011 WL 1059183 (E.D.N.Y.)......................................................................  6, 23

*Briggs v. Bremby*
792 F.3d 239 (2nd Circ., 2015)....................................................................  10

*Clark v. Alexander*
85 F.3d 146 (4th Circ., 1996)......................................................................  6, 7

*Conley v. Gibson,*
355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)..................................................  3, 7

*Davis v. The City of New York,*
902 F.Supp.2d 405 (S.D.N.Y., 2012).............................................................  9, 10

*Fishman v. Paolucci,*
2015 WL 5999318 (2nd Circ.)......................................................................  10

*Gammons v. Massachusetts Department of Housing and Community Development,*
523 F.Supp.2d 76 (U.S.D.C., D. Mass., 2007)..................................................  6, 7, 8

*Goldberg v. Kelly*
397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)..........................................  5, 6, 19, 23

*Gonzaga v. Doe,*
536 U.S.273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) ,.......................................  8

*Hellenic American Neighborhood Action Committee v. City of New York*
101 F.3d 877 (2nd Circ., 1996)......................................................................... 22

*Hudson v. Palmer*
468 U.S. 517, 104 S.Ct. 3194 82 L.Ed2d 393 (1984)................................. 22

*Kapps v. Wing,*
404 F.3d 105 (2nd Circ., 2005)...................................................................... 19

*Marino v. Ameruso*
837 F.2d 45 (2nd Circ. 1988)......................................................................... 20

*Monell v. Department of Social Services of the City of New York, et al.*
436 U.S. 658, 98 S.Ct. 2108, 56 L.Ed.2d 611 (1978).................................... 21

*Moore v. Ross,*
687 F.2d 604 (2nd Circ., 1982)..................................................................... 19
502 F. Supp. 543 ((S.D.N.Y., 1980)............................................................. 24

*Price v. Rochester Housing Authority,*
WL 2827165 (W.D.N.Y., 2006)..................................................................... 19

*Paratt v. Taylor*
451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)................................. 22

*Rios v. Town of Huntington Housing Authority*
853 F.Supp.2d 330 (E.D.N.Y., 2012)....................................................... 21, 23

*Rivera-Powell v. New York City Board of Elections*
470 F.3d 458 (2nd Circ., 2006)................................................................. 22, 23

*Rivera v. Town of Huntington Housing Authority, et al.,*
2012 WL 1933767 (E.D.N.Y.)........................................................................ 6

*Sager v. Housing Commission of Anne Arundel County,*
855 F.Supp.2d 524 (D. Maryland, 2012)......................................................... 9

*Velez v. Levy\*
401 F.3d 75 (2nd Circ., 2005)........................................................................ 23

*Vialez v. New York City Housing Authority*
783 F. Supp. 109   (S.D.N.Y., 1991)........................................................... 8, 9

*Wright v. Roanoke Redevelopment & Housing Authority*
479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)............................................... 7, 9, 10, 19

*Zinermon v. Burch*
494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)............................................ 22, 23

Statutes

42 U.S.C. Section 1396a (a) (3)................................................................. 11

42 U.S.C.  Section 1437 a........................................................................ 9

42 U.S.C. Section 1427 (d) (1)................................................................. 10

42 U.S.C. Section 1437 (d) (k)................................................................ 1,5, 7, 8, 9, 10, 11, 20, 23

42 U.S.C. Section 1983........................................................................... 1,4, 5, 6, 7 8, 9, 10, 11, 21, 23

F.R.C.P. Rule 8.................................................................................... 1, 3, 4

F.R.C.P. Rule 12 (b) (6)........................................................................ 1, 2, 3, 7, 11

N.Y. C.P.L.R. Art. 78........................................................................... 8, 9, 21, 22

Regulations

24 C.F.R. Section 982.551 (l)................................................................. 4

24 C.F.R. Section 982.552 c 2 ii and ii.................................................... 15

24 C.F.R. Section 982.555 (e) (6)........................................................... 1, 5, 8, 11, 20

## STATEMENT

On page 7 of defendants' memorandum of law in support of this motion, it is stated that "As evident in Plaintiff's Complaint, substantial evidence was presented by both parties during the course of seven informal hearings...." However, defendants' burden, pursuant to federal regulations (24 C.F.R. Section 982.555 (e) (6) is to establish the ineligibility of a Section 8 participant by "the preponderance of the evidence." The case law requirement of substantial evidence may be reconciled with the requirements of the federal regulation if "substantial evidence" is taken to mean proof by a preponderance of the evidence. As such, it would appear that both parties cannot be said to have established their cases by a preponderance of the evidence. However, whether defendants have met that burden at the administrative hearing is not the issue to be decided with regard to defendants' motion pursuant to Federal Rules of Civil Procedure Rule 12 (b) (6).

For purposes of defendants' motion, however, the Federal Rules of Civil Procedure (FRCP), Rule 8, require that a pleading stating a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief..." It is plaintiff's contention, that he has met this standard and, consequently, defendants' motion should be dismissed. Defendants limit their argument to a claim that plaintiff's allegation of a violation of his right to due process should be discounted, but ignore plaintiff's additional claim that Section 1983 encompasses as well a violation of federal law, here 42 U.S.C. Section 1437 (d) (k). Nowhere in their memorandum of law in support of their motion, do defendants even mention 42 U.S.C. Section 1437 (d) (k).

## STANDARD OF REVIEW

Two Supreme Court cases govern what a plaintiff must plead in order to state a claim that

is sufficient to defeat a FRCP Rule 12 (b) (6) motion.  *Bell Atlantic Corporation, et al. v.*

*Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) was the first.  There, plaintiffs

alleged that an agreement or conspiracy by certain telecommunications providers in restraint of

trade, violated Section 1 of the Sherman Act.  The Court enunciated certain principles in

deciding the issue: that a plaintiff, in stating his right to relief, must allege more than "labels and

conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient;

that a pleading must contain more than "a statement of facts that merely creates a suspicion [of] a

legally cognizable right of action , on the assumption that all of the allegations of the complaint

are true (even if doubtful in fact); that Rule 12 (b) (6) "does not countenance...dismissal based

upon a judge's disbelief of a complaint's factual allegations."  *Twombly*, at page 555 (footnotes

and citations omitted).

> In applying these principles the Court stated, at page 555:

> > "In applying these general standards to a Section 1 claim, we hold that stating
> > such a claim requires a complaint with enough factual matter (taken as true) to suggest
> > that an agreement was made.  Asking for plausible grounds to infer an agreement does
> > not impose a probability requirement at the pleading stage; it simply calls for enough
> > fact to raise a reasonable expectation that discovery will reveal evidence of illegal
> > agreement.  And, of course, a well pleaded complaint may proceed even if it strikes
> > a savvy judge that actual proof of those facts is improbable and 'that a recovery is
> > very remote and unlikely.' " (footnote omitted)

In denying plaintiff's motion for a preliminary injunction here, this Court, in effect, held that

plaintiff had not established a likelihood of success on the merits of the matter.  It is submitted

that, while such a motion imposes a "probability requirement," an analysis of plaintiff's

complaint, in the context of defendants' motion, does not.  In fact, on pages 6, 8, 9 and 11 of the

Memorandum and Order, denying the preliminary injunction, this Court held that, in plaintiff's

case, he had to establish "a clear or substantial likelihood of success."

In the *Twombly* opinion, the Court abrogated the prior rule enunciated in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957), which held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* at pp. 45-46. In so ruling, the Court interpreted *Conley* to mean that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."

*Twombly,* at page 563

The second applicable case is *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). There, the plaintiff, arrested in the aftermath of the September 11 attacks, brought an action against current and former government officials alleging that the conditions of his confinement were unconstitutional. The Supreme Court dismissed his complaint pursuant to FRCP Rule 12 (b) (6). In thus ruling, the Court explicated upon its ruling in *Twombly*:

> "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice....(Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'....Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.....Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense....But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'-- 'that the pleader is entitled to relief'...." *Iqbal*, at 678-679.

As stated above, in *Twombly*, the plaintiffs alleged a conspiracy or an agreement in restraint of trade. They pled that the various telecommunication-provider defendants had, in their

different areas of operation, acted in a parallel fashion, which plaintiffs claimed was indicative of

an illegal agreement.  In light of its ruling in *Iqbal*, the Supreme Court explained the refusal to

allow the complaint in *Twombly* to proceed:

> "The Court held the plaintiffs' complaint deficient under Rule 8.  In doing so it first
> noted that the plaintiffs' assertion of an unlawful agreement was a 'legal conclusion'
> and, as such, was not entitled to the assumption of truth.....Had the Court simply
> credited the allegations of a conspiracy, the plaintiffs would have stated a claim for
> relief and been entitled to proceed perforce.  The Court next addressed the 'nub' of
> the plaintiffs' complaint–the well-pleaded, nonconclusory factual allegation of
> parallel behavior–to determine whether it gave rise to a 'plausible suggestion of
> conspiracy.'....Acknowledging that parallel conduct was consistent with an unlawful
> agreement, the Court nevertheless concluded that it did not plausibly suggest an
> illicit accord because it was not only compatible with, but indeed was more likely
> explained by lawful, unchoreographed free-market behavior....Because the well-
> pleaded fact of parallel conduct, accepted as true, did not plausibly suggest an
> unlawful agreement, the Court held the plaintiffs' complaint must be dismissed..."
> *Iqbal,* at page 680.

It should be noted that the pivotal issue here is whether the plaintiff's brothers resided with

plaintiff at a time when their presence should have been reported.  This Court in its Memorandum

and Order denying the motion for a preliminary injunction, cited, on page 2 of the Order, 24

C.F.R. Section 982.551 (l) that "members of the household" may not engage in drug related or

violent criminal activity.  Plaintiff submits that his complaint contains a plausible claim that

Sheldon and Deon Leftenant were not "members of the household," and that plaintiff "is entitled

to relief."

### A COMPLAINT THAT STATES A CLAIM OF
### A VIOLATION OF FEDERAL LAW IS
### COGNIZABLE UNDER 42 U.S.C. SECTION 1983

42 U.S.C. Section 1983 provides:

> "Every person who, under cover of any statute, ordinance, regulation, custom
> or usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the

-4-

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress,...."

The United States Housing Act provides for the Section 8 Program at issue here. At 42 U.S.C. Section 1437 (d) (k) are found the requirements for a grievance hearing such as that provided for in the Section 8 Program:

> "The Secretary shall by regulation require each public housing agency receiving assistance under this Act to establish an administrative grievance procedure under which tenants will-(1) be advised of the specific grounds of any proposed adverse public housing agency action; (2) have an opportunity before an impartial party upon timely request within any period under subsection (l) of this section; (3) have an opportunity to examine any documents or records or regulations related to the proposed action; (4) be entitled to be represented by another person of their choosing at any hearing; (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and (6) be entitled to receive a written decision by the public housing agency on the proposed action."

With regard to the "written decision" required by the above statute, the federal regulation, at 24 C.F.R. Section 982.555 (e) (6), amplify the law: the person who conducts the hearing:

> "must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing."

The language of the statute is taken from the Supreme Court's decision in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). While defendants in their memorandum fail to mention 42 U.S.C. 1437 (d) (k) at all, they refer to the *Goldberg* holding to claim, in a perfunctory manner, that plaintiff was given a notice of termination, that he requested a hearing, at which he appeared with counsel, was able to question witnesses and received a written decision. Consequently, defendants claim, that the requirements of due process were met.

With regard to the statute and regulation quoted above, two questions arise: is defendants' failure to adhere to the requirements of the federal law actionable under 42 U.S.C. Section 1983; and may a plaintiff look to federal regulations which amplify the dictates of the statute, in

–5–

bringing such a claim? Plaintiff submits that both questions must be answered in the affirmative.

The Fourth Circuit Court of Appeals in *Clark v. Alexander,* 85 F.3d 146 (1996), discussed

the right to a Section 1983 action based upon a violation of federal law, and held, at page 150:

"The Supreme Court has held that violation of federal housing laws by state
agencies implementing these laws are actionable under Section 1983 by
Section 8 participants." [citations omitted]

With regard to the dictate of the regulation, the *Clark* Court held, as well, at page 151-52:

"The level of deference shown to the factfinding of a hearing officer is not
absolute but it is significant. The regulations governing hearings state that factual
findings must be 'based on a preponderance of the evidence presented at the hearing.'
[citations omitted]....*accord Goldberg,* 397 U.S. at 271, 90 S.Ct. at 1022 ('the
decisionmaker's conclusion must rest solely on the legal rules and evidence adduced at the
hearing.'). Accordingly, to insure compliance with federal law, the reviewing
court must be satisfied that the hearing officer's conclusions are supported by
substantial evidence." [citation omitted}

This Court, in *Rivera v. Town of Huntington Housing Authority, et al.,* 2012 WL 1933767

(E.D.N.Y.), quoted from Clark, above, and stated, at page 11 of the decision:

"While '[t]he Second Circuit has not yet articulated a clear standard for the level of
deference a district court show an agency's factfinding when terminating public
housing assistance.' at least one court within the Circuit has adopted the standard
set forth by the Fourth Circuit in *Clark v. Alexander...*See *Boykins v. Cmty. Dev.
Corp. of Long Island,* 2011 WL 1059183 at *5 (E.D.N.Y., Mar. 21, 2011)"

Here, in effect, the *Rivera* Court, in citing *Clark v. Alexander,* is equating substantial

evidence with the preponderance standard required by the federal regulations. In granting

plaintiff a preliminary injunction in that matter, the Court found:

"Thus, the Court concludes that this determination was not supported by substantial
evidence, and, accordingly, is not entitled to deference. Overall, the record
evidence did not establish by a preponderance of the evidence that Cristal engaged
in 'criminal activity in connection with the April 26, 2011 incident...."
*Rivera,* at page 12.

In *Gammons v. Massachusetts Department of Housing and Community Development,* 523

F. Supp.2d 76 (U.S.D.C., D. Mass.., 2007), the question was raised whether a Section 8

participant could maintain a Section 1983 action based upon the lack of a preponderance of the

evidence, or whether the participant was relegated to suit under state law. There, the plaintiff

Section 8 participant lost a hearing based upon the alleged presence of her husband in the home

and a claim of fraud. (*Id.,* at pages 78-79). Plaintiff sued in federal court, claiming a remedy

pursuant to 42 U.S.C. Section 1983, and was facing defendant's FRCP Rule 12 (b) (6) motion to

dismiss, albeit under the old *Conley v. Gibson* rule. The Court stated, at pages 81-82:

> "The threshold question is whether the plaintiffs have an enforceable right
> under Section 1983 not to have their Section 8 benefits improperly terminated in
> in contravention of HUD regulations. Defendants insist that if plaintiffs wish to
> challenge the termination decision...they must seek judicial review under state law.
> This turns out to be a complex and difficult question of federal law."

The Court discussed the Supreme Court's holding in *Wright v. Roanoke Redevelopment*

*& Housing Authority,* 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987), and the 4th Circuit's

decision in Clark, *supra,* upholding the right to Section 1983 relief when it alleged that HUD

regulations implementing statutory authority have been violated. However, the Court

acknowledged that not all of the regulations were so actionable when not supported by a statutory

provision. (*Gammons,* at pages 82-83). The Court discussed the same provisions of the United

States Housing Act at issue here, 42 U.S.C. Section 1437 (d) (k), the requirements of which have

been recited above and at paragraph 63 of plaintiff's complaint. The Court proceeded to hold, at

page 84:

> "As such, defendants argue that Section 1983 only provides a cause of action
> where the agencies failed to provide procedures consistent with the statute, regulations
> and due process clause, and contend that there is no cause of action under federal law
> where the challenge is to the sufficiency of the evidence supporting the decision to
> terminate a Section 8 subsidy. Plaintiffs contend otherwise. Supreme Court caselaw
> does not plainly answer this dispute. While the Supreme Court has clarified that a
> federal right must be 'unambiguously conferred' by Congress to support a Section

-7-

1983 action, *Gonzaga,* 536 U.S. at 283, 122 S.Ct. 2268, it nonetheless expressly reconfirmed the holding in *Wright* that the HUD statute at issue in that case, when interpreted by implementing regulations, created an enforceable right. *See Id.* at 289, 122 S.Ct. 2268."

As mentioned earlier, 42 U.S.C. Section 1437 (d) (k) mandates the creation of procedural rights for tenants faced with adverse action.  The language of the statute unambiguously confers rights for the benefit of Section 8 subsidy recipients.  One of these rights includes being 'entitled to receive a *written decision* by the public housing agency on the proposed action.' 42 U.S.C. Sec. 1437 (d) (k) (6) (emphasis added).  The HUD regulations clarify what constitutes a proper written decision by specifying that a hearing officer must 'stat[e] briefly the reasons for the decision,' and that [f]actual determinations *shall* be based upon a preponderance of the evidence presented at the hearing.' 24 C.F.R. Sec. 982.555 (e) (6). (emphasis added).  Accordingly, I conclude that a tenant who claims her Section 8 benefits have been arbitrarily terminated because a hearing officer's decision is not based on a preponderance of the evidence presented at the hearing sufficiently states a claim under Section 1983."

Similarly to defendants in the *Gammons* case above, defendants here have argued that

plaintiff's due process claims are cognizable, not before Federal Court, but that plaintiff is

relegated to State Law remedies, specifically to a proceeding pursuant to C.P.L.R. Article 78.  In

support of such claim, defendants cite the case of *Vialez v. New York City Housing Authority,*

783 F.Supp. 109 (S.D.N.Y., 1991).  There, a public housing tenant lost a termination hearing and

challenged the outcome, among other grounds, on the failure to provide notices in Spanish, and

upon the failure of defendants to adhere to the requirements of federal law.  In deciding that part

of her claim was properly heard in State and not Federal Court, the District Court stated, at pages

113-114:

"Recovery under 42 U.S.C. Section 1983 is premised upon a showing that the defendants have denied plaintiff's federal constitutional or statutory right under color of state law....

....Moreover, an unauthorized property deprivation under color of state law does not give rise to a Sec. 1983 constitutional claim where the state provides a post-deprivation remedy adequate to meet the due process requirements of the Constitution....  Although one not need exhaust state remedies before bringing a Sec. 1983 action claiming a violation of due process...one must nevertheless show that state procedural remedies are inadequate.....Thus, where a plaintiff alleges deprivation of property in

–8–

violation of the due process clause, the federal court's initial inquiry must be whether
the state has provided adequate remedies to address such unlawful acts.  If so, there
will be no claim before the federal court, whether or not the plaintiff took advantage of
the state procedure." (citations omitted).

However, while defendants cite *Vialez* in support of their argument, they fail to mention

that the *Vialez* Court did not relegate all of the plaintiff's claims in that matter to an Article 78

Proceeding.  At page 124, the Court stated:

"The final issue for consideration is plaintiff's Second Claim: that, although
notified by plaintiff that her income had decreased, the defendants failed to decrease
the amount of plaintiff's rent during the relevant period in violation of 42 U.S.C. Sec
1437 a, known as the Brooke Amendment to the Housing Act of 1937.  The statutory
provision sets a ceiling, keyed to monthly income, on the amount of rent to be charged
low-income tenants in housing projects....
Contrary to defendants' contention, this claim is not foreclosed under 42 U.S.C.
Sec. 1983 by the existence of a state remedy, i.e., Article 78, because it alleges violation
of a right secured by a federal statute rather than by the due process clause....
In *Wright v. Roanoke Redevelopment and Housing Authority,* the Supreme Court
specifically decided that public housing tenants have a private right of action in the
federal courts under Sec. 1983 for violations of the Brooke Amendment...Thus, '[I]t
is no answer that the State has a law which if enforced would give relief.  The federal
remedy is supplementary to the state remedy, and the latter need not be first sought and
refused before the federal one is invoked.' " (citations omitted).

With regard to the statutory provision at issue here, 42 U.S.C. Section 1437 (d) (k), courts

have held that it creates a right enforceable under Section 1983.  In *Sager v. Housing*

*Commission of Anne Arundel County,* 855 F.Supp.2d 524 (D. Maryland, 2012), the District Court

wrote, at pages 562-63:

"As noted, courts have held that tenants have a right enforceable under
42 U.S.C. Sec. 1983 to grievance hearings that are conducted in accordance with
the Housing Act and its implementing regulations.  (citations omitted).

In *Davis v. The City of New York,* 902 F.Supp.2d 405 (S.D.N.y., 2012), the District Court

wrote, at pages 440-41:

"The preceding subsection of the law, section 1437 (d) (k), which plaintiffs
do not invoke, provides detailed administrative grievance protections to which tenants

are entitled when a housing agency seeks to take adverse action against them. Multiple courts have held that subsection 1437 (d) (k) unambiguously confers enforceable rights. Both subsections 1437 d (k) and 1427 d (l) were enacted by Congress in 1983 as part of a supplementary appropriations bill in a section entitled 'Lease and Grievance Procedures.' " (footnotes omitted).

Two recent Second Circuit decisions amplify the role of federal statutes in the context of Section 1983 litigation. The first, *Briggs v. Bremby,* 792 F.3d 239 (C.A. 2, 2015), involved a challenge to the manner in which the federal Food Stamp Program was conducted by the Connecticut Dept. of Social Services. The 2nd Circuit affirmed the holding of the District Court that applicants for the Food Stamp Program could sue under Section 1983 to enforce the time limits of the Food Stamp Program. In doing so, the Court pointed to the provisions of the United States Housing Act and the Supreme Court decision in *Wright v. City of Roanoke Redevelopment & Housing Authority, supra.* (*Briggs,* at page 242) With regard to the right to bring a Section 1983 action, the Court stated at page 242:

> "In *Blessing v Freestone,* 520 U.S. 329 (1997), the Supreme Court established a three-part test for determining whether a federal law creates a right that can presumptively be enforced by private suit through Sec. 1983: 1) 'Congress must have intended that the provision in question benefit the plaintiff,' 2) 'the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence,' and 3) 'the statute must unambiguously impose a binding obligation on the States.' "

As has been stated, the statute in question before this Court, 42 U.S.C. Sec. 1437 (d) (k) has been held in numerous cases to meet the *Blessing* test and is actionable under Section 1983.

In *Fishman v. Paolucci,* 2015 WL 5999318 (C.A.2), the Second Circuit dealt with a challenge to the practices of the New York State Dept. of Health and the Office of Temporary Family and Disability Assistance which would terminate health coverage under the federal Medicaid Program immediately upon a participant defaulting in appearance at an administrative hearing. The plaintiffs challenged the practice inasmuch as they argued that the federal Medicaid

–10–

statute required a post-default notice to the beneficiaries that allowed them ten days to reschedule the hearing. The statute in question was 42 U.S.C. Section 1396a(a)(3). In vacating the District Court order that denied plaintiffs a preliminary injunction and remanding the matter to the District Court to reconsider the issue, the Court stated:

> "In considering plaintiffs' likelihood of success on the merits, the district court assumed that the analysis under both the Due Process Clause and Sec. 1396a (a)(3) 'is the same, since the statutory fair hearing requirement must meet the due process standards set forth in *Goldberg v. Kelly.*' ....
>
> ....
>
> But, the district court applied the incorrect legal standard in considering plaintiffs' likelihood of success on the merits. The district court concluded that the due process and Sec. 1396a (a)(3) standards are 'the same,' assuming that it was sufficient for New York to comply with due process standards.... This is not so.
>
> The district court should have considered plaintiffs' Sec. 1396a (a)(3) claim under a different standard than their due process claim. Both parties agree on this point. When a federal statute creates a right enforceable through 42 U.S.C. Sec. 1983, federal regulations 'may be relevant in determining the scope of the right conferred by Congress.' " (citations omitted).

In that case, there was a regulation that specifically stated that the administrative hearing must meet, not only the *Goldberg v. Kelly* standards, but any additional standards specified in the regulations. In the case before this Court, such specificity is not found. However, the federal statute at issue here, 42 U.S.C. Section1437 (d) (k) clearly "creates a right enforceable through 42 U.S.C. Section 1983," and the regulation, 24 C.F.R. Section 982.555 (e) (6) requires that the defendants must establish their case by "a preponderance of the evidence presented at the hearing." Against this standard, the sufficiency of plaintiff's complaint must be judged.

## THE FACTS OF THE COMPLAINT, TAKEN AS TRUE ESTABLISH A PLAUSIBLE CLAIM FOR RELIEF

The motion seeking dismissal of the complaint pursuant to FRCP Rule 12 (b) (6) includes

-11-

the declaration of counsel for defendants. Attached to the declaration are several exhibits, among them, plaintiff's complaint. However, the exhibits attached to plaintiff's complaint were not included. They are included with the affirmation of counsel for plaintiff attached to this memorandum and reference to them will be made.

Exhibit A attached to the complaint is a copy of defendants' termination notice dated March 30, 2012. Putting aside any reference to claims of residence by Marcus Ellis, which defendants failed to establish in any way, the notice claims that Sheldon Leftenant resided at 7 Tippin Drive "during various periods of time...beginning on or about June 3, 2010 and continuing to November 28, 2011."

It is further stated in the complaint, at paragraph 64 thereof, that defendants' Administrative Plan considers a person to be residing at a residence when that person is there for fourteen consecutive days or 30 days in a calendar year. At no point in presentation of their case, have defendants denied that this is a feature of the Plan. And, at no point in presentation of their case have defendants attempted to establish this time period. Nor have defendants, in their presentation of evidence or testimony by their witnesses at the hearing, nor the hearing officer in his decision, (Exhibit U) addressed what the "various periods of time" were that Sheldon Leftenant allegedly resided at the premises. The only specific date given when he was found at the premises was November 28, 2011, between the date of his mother's death, November 23 and her funeral, December I (Exhibit M). The testimony of police officers with regard to his arrest on that date appeared to indicate that Sheldon gave his address as 7 Tippin Drive. Certainly, his Dept. of Motor Vehicles identification card, issued June 3, 2010 (Exhibit K), on a date when he was clearly residing at that address, gave 7 Tippin Drive as his home address. It must be noted that the only testimony that linked Sheldon Leftenant to 7 Tippin Drive, at a time when he was not

-12-

permitted to be there without notification to defendants, according to the police witnesses, came from Sheldon Leftenant himself, whom defendants have labeled as a liar.

In addition, police witnesses had stated that Sheldon Leftenant was seen at 7 Tippin Dive, at numerous times. No specific dates were given for those supposed sightings, which could not have extended beyond November 28, 2011, since he was arrested, and incarcerated until February, 2013, beyond the scope of the hearing. It is not a violation of the federal regulations for a person to visit an address. Further, Sheldon testified that he visited his mother at 7 Tippin Drive at various times. She died, as indicated, on November 23, 2011.

While neither defendants nor the hearing officer sought to establish the various periods of time that Sheldon supposedly resided with plaintiff, and to distinguish those from the times when he was clearly living there and reported as doing so, the time period fixed by defendants in their termination notice began on October 21, 2011. (Exhibit A) Consequently, it was incumbent on defendants to establish, by a preponderance of the evidence, that Sheldon Leftenant resided at 7 Tippin Drive on October 21, 2011, and for at least 14 consecutive days, or 30 days between October 21 and November 28, 2011. It was incumbent on defendants to establish what the "various periods of time" were because the termination notice included dates when Sheldon was legally residing at 7 Tippin Drive.

In the introduction to the complaint, it is stated that no housing inspector testified at the hearing.(introduction, page 4). This statement was given in the context of the claim by plaintiff, unchallenged by defendants, that none of defendants' witnesses, ever claimed to have entered the premises or, in doing so, seen any indication that either Sheldon or Deon Leftenant was residing there at an improper time. The issue of a housing inspector is relevant, because defendants are required to conduct Housing Quality Standards inspections at least once a year to determine

-13-

conditions at a Section 8 premises. (24 C.F.R. Section 982.405). Had an inspector entered the premises as mandated by the regulations and found any evidence of the presence of plaintiff's half-brothers, it stands to reason that defendants would have called him as a witness. No inspector testified.

Against this backdrop are the exhibits appended to the complaint. Exhibit B is a letter to the defendant Housing Authority from Gabriella DeGraffe, dated August 26, 2010, stating that her intention was to have Sheldon and Deon move from her home when their father found permanent housing. In the letter she mentions her health conditions. There is no question about her serious concern regarding her health and the well-documented evidence of that. This letter was written before Sheldon was arrested in March, 2011 (Exhibit D), and long before any issue arose regarding the presence of Sheldon or Deon at 7 Tippin Drive.

In fact, the entire series of letters and exhibits have the ring of truth, aside from the obligation of this Court to treat them as true for purposes of this motion. Exhibit C is a personal declaration signed by Gabriella DeGraffe and plaintiff, as well as by Sheldon and Deon, dated October 14, 2010. In it, both brothers are listed as still residing at 7 Tippin Drive, an indication that their father had not yet located housing in which they would reside.

As stated, Sheldon was arrested in March, 2011 resulting in a termination notice sent to Gabriella DeGraffe. (Exhibit D). In response, she wrote two letters, Exhibits E and F, detailing her hospitalizations and giving an address for Sheldon as 17 Bay Bright Road, Mastic. Exhibit G is a letter from Deon, dated May 5, 2011, notarized by Susan Ortega, Deputy Director of defendant Housing Authority. In it, he too states that he moved in January, 2011 to an address in Mastic, with his father.

Exhibit H is another personal declaration prepared for defendants, dated May 2, 2011, and

-14-

signed by Gabriella DeGraffe and plaintiff. In it, neither Sheldon nor Deon is listed as a resident

of 7 Tippin Drive. As a result of these changes, defendants sent Exhibit I to Ms. DeGraffe, dated

May 18, 2011, stating that because of the removal of Sheldon, Deon and two others from the

household, the family "must downsize," that is, move to smaller quarters. Gabriella DeGraffe

was, at that point, at death's door. Why would she lie about the absence of Sheldon and Deon,

resulting in the need to move to smaller quarters? If they were, in fact, still residing with her, why

not tell defendants the truth, in the hope of not having to move? Sheldon was in jail until July,

2011 (complaint introduction, page 2) When he was released, Sheldon could have been then

removed from the household and the family still kept on the Program pursuant to 24 C.F.R.

Section 982.552 c (2) I and ii. It should be noted that defendants never questioned the removal of

the other two prior residents listed in Exhibit I.

Exhibit J is the decision of the hearing officer, regarding the administrative hearing

following the arrest of Sheldon Leftenant. In the decision he implicitly agrees that Sheldon was

no longer living at the premises although Ms. DeGraffe had not completed paperwork to remove

him for purposes of defendants.

With regard to Deon Leftenant, the termination notice, Exhibit A, stated that Deon resided

with plaintiff "during various periods of time...beginning on or about June 30, 2011 and

continuing to February 23, 2012." That latter date was changed by amendment to October 12,

2012. Once again, in their presentation of evidence and witnesses at the hearing, and in the

decision of the hearing officer (Exhibit U), the "various periods of time" are not identified, except

for a single date within the period of plaintiff's alleged responsibility, beginning on October 21,

2011.

On February 12, 2012, Police Officer Rocchio stopped a vehicle and gave a summons to

Marcus Ellis for a faulty light. (Exhibit R). She testified that Deon was a passenger in the automobile and gave his address as 7 Tippin Drive. His DMV non-driver identification card listed 7 Tippin Drive as his address. In addition, police witnesses testified that, in June and October, 2011, Deon was interviewed and gave his address as 7 Tippin Drive. This was noted in this Court's Memorandum and Order, on pages 3 and 4, obviously challenging the credibility of plaintiff's position that Deon moved from 7 Tippin Drive in January, 2011. However, once again, this testimony was based upon the recollection of police officers provided well over a year after the encounters and from statements attributed to Deon, not from any investigation conducted by defendants nor any of their witnesses. Defendants are relying on the credibility of Deon in the same breath as they claim that he is a liar when his testimony contradicts their position.

It is the position of plaintiff, with strong support in the record, that the hearing officer completely failed to comment on any evidence that contradicted defendants' position in this matter. Nowhere is that more apparent than in his comments regarding Exhibit L, Deon' application to the DMV, dated October 18, 2011, three days before the date on which defendants fix plaintiff's responsibility. This document was found in defendants' files. In that application for an identification card, Deon lists his mailing address as 7 Tippin Drive. Regarding this part of the application, the hearing officer comments. (Exhibit U, October 2, 2013 testimony). Inexplicably, he fails to even mention that, on the very next line of the application, Deon writes a statement that is at the very heart of the issue before this Court: that his home address had changed to 17 Bay Bright Drive, Shirley, New York. This was consistent with the letter of Gabriella DeGraffe to defendants on May 5, 2011 (Exhibit F), regarding the address of Sheldon, although she stated the town incorrectly, and with the letter of Deon, dated May 5, 2011, (Exhibit G), although he too identified the town as Mastic.

-16-

As stated, this application, made three days before defendants claimed that plaintiff was responsible for listing the household composition, must be taken as true.  More than that, it is very likely true.  For what purpose would Deon have lied on this application, distinguishing between a mailing address and a home address, at a time before any issue arose regarding the brothers' living arrangements?  It is submitted that the fact that the hearing officer even fails to mention this part of the application was that it challenged his already-formed conclusion to rule in favor of defendants.

With regard to the incident of October 7, 2012, (Exhibit S), a police officer testified that an unnamed defendant was found to be in possession of marijuana in an automobile near 7 Tippin Drive.  This defendant supposedly stated that she had purchases the substance from "Deon."  No last name of Deon was given.  The defendant was not available for cross examination, inasmuch as her name had deliberately been blacked out.  In the case of *Basco v. Machin,* 514 F.3d 1177 (C.A.11, 2008), the Circuit Court discussed the reliability of hearsay testimony. At page 1182, the Court cited language that hearsay was reliable, among several grounds, including when such statements have "been recognized by courts as inherently reliable."  That is certainly not the case here, where an unnamed defendant casts about to fix blame on another.

Another ground given for testing the reliability of hearsay, given in the *Basco* decision, on page 1182 was that "the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant."  Neither option was available to plaintiff as the testimony was first given at the hearing session of November 8, 2013, and, as stated, the declarant was unknown. (Exhibit U). On that same night, the police witness who provided the hearsay statement, testified that Deon Leftenant was questioned by his partner who was not present, but not searched, arrested, nor was the house entered.

In his decision, (Exhibit U) the hearing officer states, at the bottom of the first page, that "[i]n making a determination, the Hearing Officer has had to consider all of the extensive documentation and information submitted by both sides and the testimonies of witnesses at these hearings."  His decision proceeds to attest to the fact that, while he "had to consider all of the extensive documentation and information submitted by both sides....," in fact, he failed to consider, except in a superficial way, the documentation presented by plaintiff.  Aside from a failure to mention the most salient part of Deon's DMV application, (Exhibit L), he fails to discuss at all Exhibit P, the extensive documentation submitted by the social services' witnesses from SCO who made extensive visits and phone calls to the home between November, 2011 and December, 2012, visits both announced and unannounced, and found no indication that Deon was present (Sheldon was in jail during this time).  These witnesses, as well as Denise Guido, from the Suffolk County Dept. of Social Services (DSS), who was there during 2012 investigating plaintiff's application for custody of younger siblings, were all mandated reporters who testified that they were required to report the presence of Sheldon or Deon had either been seen at 7 Tippin Drive.

In fact, it appears that the hearing officer paid so little attention to plaintiff's witnesses that he states that the notes of the DSS worker, Denise Guido, were offered in evidence. (Exhibit U, notes of March 14, 2014).  He identifies these notes as respondent's (plaintiff's) Exhibits 23 and 24 at the hearing.  In fact, Ms. Guido's notes were not offered, only reviewed by defendants' counsel at the hearing (complaint, paragraphs 30, 31), and the Exhibits to which he refers at the hearing, 23 and 24, were the final custody order (Exhibit O), and the photograph of Sheldon and Deon Leftenant shown to plaintiff's witnesses.  The notes which were offered at the hearing are Exhibit P, the notes of the extensive contacts between the SCO witnesses and plaintiff and his

-18-

family, and were not mentioned by the hearing officer in his decision.

Once again, the statements of plaintiff's social services' witnesses, and the documentation offered, must be taken as true. Of equal importance, they were unchallenged by defendants. Counsel for defendants at the hearing cross-examined one of the SCO witnesses, Jason Eggers, asking whether he visited in the evening or on weekends. He did not. However, in the pages and pages of meticulous notes he submitted, Mr. Eggers testified that he went throughout the home, 7 Tippin Drive, during his visits, and never saw nor heard of Sheldon or Deon. The cross-examination, of course, was intended to show that the brothers could have purposely avoided the social services' witnesses. However, this reverses the burden. It was the burden of defendants to show that Sheldon and Deon were living at 7 Tippin Dive. This, they failed to do, and plaintiff's complaint makes a plausible case that he had a right to remain on the Section 8 Program.

> DEFENDANTS HAVE FAILED TO AFFORD TO
> PLAINTIFF THE DUE PROCESS RIGHTS TO
> WHICH HE WAS DUE AS A SECTION 8
> PARTICIPANT

A participant in the Section 8 Housing Choice Voucher Program has a property interest in the voucher which may only be terminated after due process has been afforded that participant. *Wright v. Roanoke Redevelopment & Housing Authority , supra; Kapps v. Wing,* 404 F.3d 105 (C.A.2, 2005); *Price v. Rochester Housing Authority,* WL 2827165 (W.D.N.Y., 2006). Plaintiff contends that defendants' motion here must be dismissed as he has put forth a plausible claim that defendants have violated his rights to due process.

In the Memorandum and Order of the Court, at pages 6-7, and in defendants' memorandum of law, at page 5, reference is made to the case of *Moore v. Ross,* 687 F.2d 604 (C.A.2, 1982). The *Goldberg v. Kelly, supra,* requirement that due process requires the hearing

-19-

officer to state the reasons for the determination and the evidence relied upon, is to "protect against arbitrary and capricious decisions or actions grounded upon impermissible or erroneous considerations, to safeguard against a decision on ex parte evidence, and perhaps most importantly to facilitate judicial review by enabling the court to determine whether the decision was based upon an impermissible reason, or no reason at all."

Aside from plaintiff's claim that his complaint makes a plausible claim with regard to the preponderance of the evidence requirement of 42 U.S.C. Sec. 1437 (d) (k) and 24 C.F.R. Sec. 982.555 (e) (6), plaintiff also challenges the decision of the hearing officer (Exhibit U) in that the decision fails to adequately state the reasons upon which he relied and fails to even answer to what extent he accepted the allegations of the termination notice. In doing so, plaintiff will address defendants' claim that this Court has no jurisdiction to hear plaintiff's due process argument.

In their opposition, defendants cite *Marino v. Ameruso,* 837 F.2d 45 (C.A.2, 1988). There, the plaintiff, a traffic enforcement agent, was accused of soliciting and accepting a bribe. At an administrative hearing, the ALJ apparently made an evidentiary error in allowing the testimony of a witness. Plaintiff lost the hearing, was dismissed from his municipal employment and brought a Sec. 1983 action to challenge the dismissal. In relegating plaintiff to an Article 78 Proceeding, the Second Circuit held, at page. 47:

> "The Supreme Court has clearly distinguished between a claim that an established state procedure does not afford procedural due process and a claim that a property right was lost because of a random and unauthorized act by a state actor. In the latter case, the existence of an adequate postdeprivation state remedy for the loss affords due process." (citations omitted).

The Court held that the error of the ALJ fell into the "random and unauthorized action that could not have been anticipated by the state and, thus, plaintiff had a viable postdeprivation

remedy in the form of an Article 78 Proceeding.

In their memorandum, defendants cite the Supreme Court decision in *Monell v. Dept. of Social Services of the City of New York, et al.,* 436 U.S. 658, 98 S.Ct. 2108, 56 L.Ed.2d 611 (1978).  There, the Court stated, at page 694:

> "We conclude, therefore, that a local government may not be sued under Sec. 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Sec. 1983."

Nowhere do defendants deny that their acts represent "official policy."  On the bottom of page 1 of their memorandum opposing a preliminary injunction, they indicate that "the Housing Authority monitors and administers the federally sponsored rent subsidy program, commonly referred to as Section 8."  In citing *Monell,* defendants argue, on page 8 of their memorandum here, that plaintiff's complaint's "conclusory allegation that Defendants are 'in charge of the Section 8 Program in the Town of Huntington' is insufficient to prove a deliberate policy.

However, plaintiff in his Ninth Claim for Relief in the complaint, alleges that defendants have established a policy of terminating participants based upon visits by "unauthorized persons." This is in line with defendants' reliance at the hearing, in the decision, and in the affidavit of defendant Bynoe, attached to defendants' opposition to a preliminary injunction, on vague claims of conversations with police officers and surveillance.  To substantiate the amorphous periods of time in the termination notice that the brothers resided at 7 Tippin Drive, the hearing officer relied, on page three of his decision (Exhibit U) on claims that Sheldon and Deon were seen "regularly" at 7 Tippin Drive.

In their memorandum, defendants cite as well *Rios v. Town of Huntington Housing Authority,* 853 F.Supp.2d 330 (E.D.N.Y., 2012).  There, plaintiff was successful at the

administrative hearing, but defendants' Board of Directors overturned the decision and directed

the termination of plaintiff from the Section 8 Program. This they had the authority to do but only

in very limited circumstances. This Court ultimately held that plaintiff must bring an Article 78

Proceeding to vindicate her rights.

In the *Rios* decision, the Court cited *Rivera-Powell v. New York City Board of Elections,*

470 F.3d 458, (C.A.2, 2006). There, in a challenge by a judicial candidate to a ruling striking her

from the election ballot, the Court stated, at pages 464-65:

> "The Due Process Clause does not protect against all deprivations of
> constitutionally protected interests in life, liberty or property, 'only against deprivations
> without due process of law.' *Paratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 68
> L.Ed2d 420 (1981)....' (T)o determine whether a constitutional violation has occurred,
> it is necessary to ask what process the State provided, and whether it was constitutionally
> adequate.' *Zinermon v. Burch,* 494 U.S. 113,126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).
>
> As we explained in *Hellenic American Neighborhood Action Committee v. City
> of New York ('HANAC'),* in evaluating what process satisfies the Due Process Clause,
> 'the Supreme Court has distinguished between (a) claims based on established state pro-
> cedures and (b) claims based on random, unauthorized acts by state employees.' 101 F.3d
> 877. 880 (2nd Cir. 1996) (citing *Hudson v. Palmer,* 468 U.S. 517, 532, 104 S.C. 3194, 82
> LED.2d 393 (1984), and *Paratt,* 451 U.S. at 541, 101 S.C. 1908). When the state con-
> duct in question is random and unauthorized, the state satisfies procedural due process
> requirements so long as it provides meaningful post-deprivation remedy. *Id., see Hudson,*
> 468 U.S. at 533, 104 S.C. 3194 (explaining that when deprivations are 'random and
> unauthorized...predeprivation procedures are simply impracticable since the state cannot
> know when such deprivations will occur'....In contrast, when the deprivation is pursuant
> to an established state procedure, the state can predict when it will occur and it is in a
> position to provide a pre-deprivation hearing. HANAC, 101 F.3d at 880, *Paratt,* 451 U.S.
> at 542, 101 S.C. 1908. Under those circumstances, 'the availability of post-deprivation
> procedures will not, *ipso facto,* satisfy due process.' HANAC, 101 F.3d at 880 (footnote
> omitted)"

*Paratt,* cited above, involved the negligent destruction of a prisoner's hobby kit. *Hudson*

involved an intentional search of a prisoner's cell and destruction of some of his belongings. In

neither case, the Supreme Court held, could the state have prevented, by a pre-deprivation hearing,

the conduct complained of. *Marino v. Ameruso,* cited above, falls within this construct.

In *Zinermon v. Burch,* 494 U.S. 113, 110 S.C. 975, 108 LED.2d 100 (1990), the Supreme

Court stated with regard to Section 1983, at page 124:

> "It...was intended not only to 'override' discriminatory or otherwise unconstitutional
> state laws, and to provide remedy for civil rights 'where state law was inadequate,'
> but also to provide a federal remedy 'where the state remedy, though adequate in theory,
> was not available in practice....' "

In *Rios,* this Court stated, at page 338:

> "As the Second Circuit has noted, '[t]he distinction between random and
> unauthorized conduct and established state procedures...is not clear cut.' Rivera-
> Powell, 470 F.3d at 465. However, as a general rule, conduct cannot be considered
> 'random and unauthorized,' regardless of whether the acts are contrary to state law if
> (1) 'the state delegated to those actors "the power and authority to effect the very
> deprivation complained of...[and] the concomitant duty to initiate the procedural
> safeguards set up by state law' ", id (quoting Zinermon, 494 U.S. at 138...or (2) the
> deprivation resulted from "the acts of high ranking officials who are 'ultimate
> decision maker[s]' and have 'final authority over significant matters.' " (quoting
> *Velez v. Levy,* 401 F.3d 75, 91-92 & nn. 14-15 (2nd Cir., 2005)"

Defendants are the "decision makers" envisioned by the Court.  However, even if the

actions of defendants are not random and unauthorized, which by the standards set, they are not,

the Court could deny this aspect of plaintiff's claim if he "was afforded all of the pre-deprivation

process...due under Supreme Court precedent, as well as applicable federal statutes and

regulations." *Rios, supra,* at page 339.

With regard to the process that is due, plaintiff, in his complaint, has recited the federal

law at 42 U.S.C. Section 1437 (d) (k), mandating the conduct of administrative hearings.  This

Court, in *Boykins v. Community Development Corporation of Long Island,* 2011 WL 1059183

(E.D.N.Y.) identified, as an element of procedural due process, the requirement that the decision

state the reasons for the determination reached. *Boykins, supra,* at page 4.  In so doing, the Court

adhered to the findings of the Supreme Court in *Goldberg v. Kelly, supra.*

While it is not necessary that the decision go into extensive detail in enumerating its

findings, the decision here is inadequate even by the less rigorous standards to which such determinations are held.  In *Moore v. Ross, supra,* the District Court, at pages 555-56, listed the reasons for the "reasons and evidence requirement": to protect against arbitrary and capricious decisions, or erroneous considerations; to safeguard against a decision on ex parte evidence; and to facilitate judicial review by enabling a reviewing court to determine whether the decision was based upon "an impermissible reason"or "no reason at all."

Here, although the hearing officer states, at the bottom of page one of his decision, that he "has had to consider all of the extensive documentation and information submitted by both sides," a review of his decision reveals his failure to mention at all, two of the most salient pieces of evidence submitted on behalf of plaintiff, raising serious questions regarding whether he considered them at all, or, more damning, ignored any evidence that disproved Sheldon or Deon's residence at 7 Tippin Drive beginning October 21, 2011.

At the bottom of page two of his decision, the hearing officer writes, regarding the police reports and 7 Tippin Drive, that "(n)o report ever listed any other address for them.  If this was not their residence they why did give the address of where they were actually living?  If the hearing officer had actually considered "all of the extensive documentation," he would have mentioned that, on October 18, 2011,three days before the date upon which defendants fix plaintiff's responsibility, Deon Leftenant completed a DMV application, (Exhibit L) and stated that his home address had changed to 17 Bay Bright Drive, Shirley, New York, although he continued to receive mail at 7 Tippin Drive.  The hearing officer mentioned the latter fact, but, incredibly, not the former.

Had the hearing officer actually considered "all of the extensive documentation," he would have mentioned over a full year's notes, from November, 2011 through December, 2012, detailing

-24-

phone calls and visits to 7 Tippin Drive, some unannounced, by workers with SCO, who, as mandated reporters had to mention the presence of Sheldon or Deon at the premises, had they been seen there.  Yet, he claims that another worker's notes, the DSS investigator, Denise Guido, were offered in evidence.  They were reviewed by counsel for defendants, but were not offered.

The hearing officer credits only the police reports and police testimony which, with regard to the residence of Sheldon and Deon, was based only on statements attributed to them, not on the results of any investigation conducted by the police or defendants.  The hearing officer never bothered to reconcile the contradiction of apparently disbelieving Sheldon and Deon when they testified, while at the same time, acting as if the police reports resulted from police investigation and not from the statements of the same disbelieved brothers and if it was necessary to consider the police officers to be liars to find for plaintiff.  On page 7 of their memorandum, defendants assert that plaintiff is claiming that the hearing officer had to believe the testimony of plaintiff and his witnesses.  Plaintiff asserts no such thing.  However, the hearing officer had to, at least, consider contrary evidence and testimony.  As stated, given the dates of residence asserted in the termination notice, it was necessary for the hearing officer to find when the brothers were residing at 7 Tippin Drive.  Instead, he never even writes that they were living there, only that "the police reports do cast doubt and call into question that possibility."  The issue before the Court is one of plausibility and plaintiff's complaint asserts a plausible claim to the insufficiency of the decision.

CONCLUSION

By reason of the foregoing, plaintiff respectfully submits that defendants' motion should be denied, together with such other and further relief as to the Court may seem just.

Dated: March 29, 2016

Victor J. Ambrose

–25–