UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
EMMANUEL DEGRAFFE,

                Plaintiff,

        v.

TOWN OF HUNTINGTON HOUSING
AUTHORITY, and SIELA A. BYNOE, *in her
capacity as Executive Director of the Town of
Huntington Housing Authority*,

                Defendants.
-----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
15–CV–3939 (JMA) (ARL)

**FILED**
**CLERK**

3/30/2017 3:12 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

      In this action, plaintiff Emmanuel DeGraffe challenges the termination of his Section 8 housing subsidy by defendant Town of Huntington Housing Authority ("HHA"). In July 2015, plaintiff filed the instant complaint along with a motion for a preliminary injunction. In an order dated September 16, 2015 (the "PI Order"), the Court denied plaintiff's motion for a preliminary injunction (the "PI Motion"). Currently pending before the Court is defendant's motion to dismiss the complaint. Familiarity with the PI Order is assumed. Accordingly, the Court will not recount the factual background, procedural history, legal standards, or the Court's analyses of plaintiff's claims that have already been set out in the PI Order, unless necessary here.

### I.  DISCUSSION

**1. Standard for a Motion to Dismiss**

      On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes the complaint's factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). That principle, however, is "inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, a complaint must

1

plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556).

In reviewing a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." Heckman v. Town of Hempstead, 568 F. App'x 41, 43 (2d Cir. 2014)

**2. The Parties' Arguments**

Plaintiff, proceeding under 42 U.S.C. § 1983, argues that defendants violated his constitutional due process rights because the written decision of Hearing Officer Jamie Morrison failed to sufficiently explain the reasons for his decision. Additionally, plaintiff alleges that Morrison's decision violated due process because the record at the hearing did not include substantial evidence to support a finding that the HHA met its burden to prove the alleged violations by a preponderance of the evidence. Plaintiff also alleges that Morrison's insufficient written decision and the HHA's failure to introduce substantial evidence violate certain federal statutes and regulations that codify and expand on due process protections. Plaintiff maintains that these statutes and regulations are enforceable through § 1983.

In moving to dismiss, defendants argue that Morrison's decision was supported by substantial evidence and that he sufficiently stated the reasons for his ruling. Defendants also

argue that plaintiff has failed to plausibly allege Monell liability for the violations alleged in the complaint. Finally, defendants assert that plaintiff's claims should be dismissed because an Article 78 proceeding in state court is the appropriate vehicle for plaintiff's due process challenges.

As explained below, plaintiff has failed to allege any plausible § 1983 claims and has also failed to plausibly allege that defendants are liable under Monell. Accordingly, it is unnecessary for the Court to reach defendants' Article 78 argument.

In opposing defendants' motion, plaintiff largely rehashes the same arguments that plaintiff raised in the PI Motion and that the Court previously rejected in the PI Order.[1] Because the PI Order explains why the bulk of plaintiff's arguments are not viable, it is unnecessary to address each of plaintiff's arguments in the instant decision. To the extent that some of plaintiff's arguments warrant additional discussion, those arguments are addressed separately below.

### 3. The Analysis in the PI Order Resolves the Bulk of Plaintiff's Arguments

The reasons set out by the Court in PI Order dispose of most of the arguments raised in plaintiff's opposition to the motion to dismiss.

Plaintiff stresses that the PI Order only held that plaintiff could not establish a "clear or substantial likelihood of success" and that this standard differs from the plausibility standard applicable on a motion to dismiss. The Court acknowledges that these are different standards. However, as explained below, the Court's rationale for finding that plaintiff could not establish a clear likelihood of success also shows why plaintiff's arguments fail under the plausibility standard.

---

[1] Plaintiff's complaint alleges ten "Claim[s] for Relief," many of which appear to overlap in various respects. Virtually all of these claims appear to be variations on the two central issues addressed in the Court's PI Order—namely: (1) whether Morrison's written decision sufficiently stated his reasons for the termination; and (2) whether his decision was supported by substantial evidence. Notably, plaintiff's opposition brief does not attempt to clear up any of the confusion in the complaint. Plaintiff's brief argues, haphazardly, that his claims are plausible, discussing Morrison's decision and the evidence at the hearing. Plaintiff, however, never explicitly ties these his scattered plausibility arguments to the numbered "claims for relief" alleged in the complaint.

3

First, the relevant record for the PI Motion and instant motion to dismiss is essentially the same. In order to address plaintiff's claims, the Court must look to the termination notice, Morrison's written decision, and the evidence that was introduced at the hearing before Morrison. As noted in the PI Order, there do not appear to be any material disputes about what transpired at the hearing and what evidence was introduced. (See PI Order at 12 n. 8.) And, all of the essential facts that the Court considered on the PI motion can be considered on the instant motion to dismiss because those facts are contained in the complaint, the documents attached to the complaint, other documents that the Court can properly consider on this motion, and admissions made in plaintiff's PI Motion. (See id.)

The Court accepts as true the allegations in plaintiff's verified complaint stating what transpired during the hearing.[2] Courts considering a motion to dismiss also can consider "documents attached to [the complaint] or incorporated in it by reference, [and] documents 'integral' to the complaint and relied upon in it." Heckman, 568 F. App'x at 43. Here, plaintiff attached to his complaint the termination notice, Morrison's decision, Morrison's summaries of the evidence at the hearing, and many of the exhibits entered into evidence at the hearing. Additionally, in opposing the PI motion, defendant provided the Court with a few additional police reports that were also introduced during the hearing. (Aff. of Siela Bynoe, Ex. B, ECF No. 16.) Those defense exhibits can be considered on this motion to dismiss because they were either

---

[2] At certain points in plaintiff's opposition brief, plaintiff argues that the Court must accept, as true, the allegations in his complaint. Of course, this is correct as a technical matter. However, given the nature of plaintiff's claims, the only relevant factual question is determining what testimony and other evidence were offered and admitted at the hearing before Morrison. Contrary to plaintiff's suggestion, whether or not DeGraffe's testimony at the hearing (and the other testimony and evidence he submitted at the hearing) were, in fact, true is not relevant to the claims plaintiff raise in the instant suit. (See, e.g., Pl. Opp'n Mem. at 14, 19, ECF No. 31.) Rather, this Court is tasked with determining, inter alia, whether the proof that supported Morrison's decision rose to the level of substantial evidence. Therefore, a number of plaintiff's arguments—such as his assertion that the complaint plausibly states that Sheldon and Deon were not, in fact, "members of the household"—miss the point. (Id. at 3.) The critical question, for purposes of plaintiff's substantial evidence challenge, is whether there was substantial evidence to support Morrison's decision—not whether one parties' version of events was, in fact, true.

4

incorporated by reference into the complaint (and the attached exhibits) or integral to the complaint.[3]  Finally, the Court can consider admissions that plaintiff made in the PI Motion concerning what evidence was introduced at the hearing.[4]  (See, e.g., PI Order at 4 (citing plaintiff's PI Motion, which admitted that officers gave certain testimony at the hearing).)

Second, the reasons articulated in the Court's PI Order are also applicable here because plaintiff's § 1983 claims raise questions of law, which the Court must decide by looking to Morrison's hearing decision and to the evidence that was introduced at the hearing before Morrison.  Although the Court's conclusions in the PI Order are couched in terms of the standard applicable to preliminary injunction motions, these were legal conclusions.  Unless plaintiff now has different arguments that were not raised in the PI Motion or can convince the Court that its earlier conclusions were incorrect, the Court does not see how plaintiff can show that his claims are plausible and survive a motion to dismiss.

**4. Plaintiff's Remaining Arguments**

Because the reasons set forth in the Court's PI Order dispose of most of plaintiff's arguments, the Court will only address five arguments in plaintiff's opposition that warrant further analysis.  Some of these arguments were raised, in slightly different forms, in the PI Motion.  As explained below, none of these arguments are persuasive.  Plaintiff has failed to allege any plausible claims.

---

[3] Plaintiff does not dispute that these police reports, some of which are explicitly referenced in Morrison's summaries, were introduced at the hearing.  Moreover, even if the additional police reports produced by defendants could not be considered on a motion to dismiss, there would still be ample evidence before the Court concerning what transpired during the hearing for the Court to conclude that plaintiff's claims are not plausible.  Notably, Morrison's summaries indicate that officers testified, at the hearing, about the substance of the encounters discussed in the police reports. And, the testimony discussed in Morrison's summaries includes the important testimony from officers concerning Deon's October 7, 2011 encounter with the police, which was discussed at length in the PI Order.  (See PI Order at 12–14; March 29, 2016 Affirm. of Victor Ambrose ("Ambrose Affirm.") Ex. U, ECF No. 32-2)

[4] Notably, plaintiff does not suggest that discovery might alter the current record in any material fashion or that the record on summary judgment would be materially different than what is currently before the Court.

5

First, plaintiff spends multiple pages of his brief arguing that, at the hearing, the HHA had to establish DeGraffe's violations by a preponderance of the evidence. As explained in the PI Order, the Court assumed that this was the governing standard and that the relevant regulations, which impose a preponderance of evidence standard, are enforceable in a § 1983 action. (PI Order at 7, 8 n. 4, 11.) The Court applies the same approach here in considering defendants' motion to dismiss. Morrison's decision was sufficient to show that he applied the preponderance of the evidence standard. (See, e.g., Morrison Hearing Decision at 3, Ambrose Affirm Ex. U ("In consideration of the individual circumstances of the family and the preponderance of the evidence presented at these hearings, it is the decision of the Hearing Officer to uphold the decision of the Huntington Housing Authority to terminate the Section 8 subsidy to Emmanuel DeGraffe." (emphasis added)).) With respect to defendants' substantial evidence argument, the Court has already concluded that substantial evidence supported Morrison's determination. This evidence was sufficient to enable a factfinder to conclude, by a preponderance of the evidence, that the violations alleged by the HHA concerning residency and criminal activity occurred.

Second, plaintiff challenges the sufficiency of Morrison's written decision on various grounds. None of those arguments are persuasive. Plaintiff insists that Morrison failed to explicitly address certain important evidence and contradictions in the record. Plaintiff does not cite to any authority indicating that a hearing officer's decision must be so specific. Morrison's

6

decision made clear that he had considered all of the evidence—that was sufficient.[5] (See PI Order at 11.)

Third, plaintiff suggests that there was not substantial evidence to support a finding that, after October 21, 2011, Deon and Sheldon resided at 7 Tippin for 14 consecutive days or 30 days in a calendar year, which plaintiff asserts is necessary to establish residency under the rules of the HHA. As explained in the PI Order, the record contains evidence that, during multiple police encounters after January 2011, Deon and Sheldon indicated to officers that they were living at 7 Tippin. (See PI Order at 12–13; Summary of Oct. 2, 2013 Hearing, Ambrose Affirm Ex. U (noting that officer who arrested Sheldon testified that he determines an arrestee's residence based on what the arrestee tells him).) This evidence—which contradicted DeGraffe's claim that Sheldon and Deon moved out in January 2011—constituted substantial evidence from which a hearing officer could conclude, by a preponderance of the evidence, that Deon resided continually at 7 Tippin between June 30, 2011 and October 12, 2012 and that Sheldon did the same between June 3, 2010 and November 28, 2011 except for the time period in which he was incarcerated. Accordingly, there was substantial evidence showing that both Sheldon and Deon were residents of 7 Tippin when DeGraffe signed his Section 8 declaration on October 21, 2011. None of the evidence introduced by plaintiff at the hearing, and discussed in plaintiff's opposition brief, is sufficient to

---

[5] In addition to his three-page written decision, Morrison also provided the parties with 14 pages of written summaries, which outlined evidence introduced at the hearing. It is does not appear that Morrison was required to produce such summaries. In any event, the fact that Morrison produced such summaries is further confirmation that Morrison considered the hearing evidence and made a reasoned determination. Plaintiff now attempts to nitpick these summaries by arguing that Morrison's failure to mention certain evidence in these summaries—such as the social workers' notes and certain information listed on Deon's DMV application—shows a violation of due process. These arguments are meritless.

Plaintiff also cites to a minor error in one of the summaries where Morrison erroneously indicated that certain evidence—-the notes of social worker Denise Guido—was admitted into evidence. Although the notes were apparently discussed at the hearing and reviewed by defendant's attorney during a recess, these notes were never, in fact, introduced into evidence. This minor error does not constitute a due process violation. Nor does it suggest that Morrison failed to consider all of the evidence that was admitted at the hearing.

7

show that the evidence of these police encounters fell below the threshold of substantial evidence on the issue of residency.

Fourth, plaintiff argues that Morrison ignored certain critical pieces of evidence, including information listed on Deon's October 18, 2011 application for a DMV identification card. In this application, Deon listed 7 Tippin as his mailing address, but a different address—17 Bay Bright Drive in Shirley, New York (where Deon's father lived)—as Deon's home address. Plaintiff argues that this application was critical evidence illustrating that Deon was, in fact, no longer residing at 7 Tippin in October 2011. Plaintiff argues that Deon had no reason to lie on the DMV application and that Morrison failed to address this critical evidence.

However, Morrison's failure to explicitly mention, in his written decision or hearing summaries, the fact that Deon's DMV's application listed 17 Bay Bright Drive as his home address, does not establish that Morrison's written decision was deficient. As for plaintiff's substantial evidence challenge, Deon's DMV application does raise questions as to why Deon would include this information on the DMV application if it was not true. However, this ambiguous piece of evidence does not show that HHA's evidence concerning Deon's residency—which included testimony that Deon verbally admitted to the officers that he resided at 7 Tippin—fell below the threshold of substantial evidence. Notably, the mere fact that Deon's application also listed 7 Tippin as his mailing address, around the same time that he was representing to police officers that 7 Tippin was his residence, supports, to some extent, defendants' position that Deon's residence was, in fact, 7 Tippin.

Fifth, plaintiff argues that certain hearsay evidence that was admitted concerning Deon's alleged criminal activity was insufficiently reliable and probative to constitute substantial evidence. According to a police report admitted at the hearing, an unidentified declarant, who was

8

arrested in the vicinity of 7 Tippin with marijuana, identified "Deon" as the person who sold the declarant marijuana.

In his PI Motion, plaintiff argued, in passing, that this hearsay evidence did not constitute substantial evidence showing that Deon engaged in criminal activity. In the PI Order, the Court rejected this argument, and went on to explain that even if there was insufficient evidence of Deon's criminal activity, there was clearly substantial evidence of three other violations, namely: (1) DeGraffe's failure to disclose that Deon was a resident on the declaration; (2) DeGraffe's failure to disclose that Sheldon was a resident on the declaration; and (3) Sheldon's criminal activity. (PI Order at 16.)

In opposing defendants' motion to dismiss, plaintiff reasserts the argument that there was not substantial evidence of Deon's criminal activity and attempts to develop this argument further. Plaintiff now stresses that this hearsay evidence was insufficient to establish Deon's criminal activity because it was not inherently reliable and plaintiff had no ability to subpoena and cross-examine the declarant since the declarant's identity was redacted in the police report.

As the PI Order explained,

> [in Basco v. Machin, 514 F.3d 1177 (11th Cir. 2008)], one of the few circuit decisions to address hearsay evidence in the context of Section 8 hearings, the Eleventh Circuit observed that the "reliability and probative force of [hearsay] evidence depend[s] on 'whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable.'"

(PI Order at 14 (citing Basco, 514 F.3d at 1182 (quoting J.A.M. Builders, Inc. v. Herman, 233 F.3d 1350, 1354 (11th Cir. 2000))))).

It is a close question whether the unidentified declarant's statement that "Deon" sold marijuana is, standing on its own, sufficiently reliable and probative to constitute substantial

9

evidence of criminal activity. However, this was not the sole evidence of Deon's criminal activity. At the hearing, evidence was introduced that Deon admitted to police officers that he was in a local gang, the "Tip Top Boyz." According to one officer, people in the neighborhood and informants indicated that this gang was "said to be involved in drugs and fighting." (Summary of Oct. 2, 2013 Hearing, Ambrose Affirm Ex. U.) Also, Sheldon—Deon's brother—was involved in the same gang and was clearly involved in criminal activity. Given those pieces of direct and circumstantial evidence, there was sufficiently reliable and probative evidence in the record to establish, by a preponderance of evidence, that Deon engaged in criminal activity prohibited by 24 C.F.R. § 982.551(l).

Moreover, even if there were not substantial evidence of Deon's criminal activity, as the PI Order pointed out, there was substantial evidence of three other violations. Despite the Court flagging this issue in the PI Order, plaintiff's opposition brief does not even attempt to argue why his substantial evidence claim would still be viable given that substantial evidence supported the three other violations.

The Court has reviewed the remaining arguments raised by plaintiff and finds them to be meritless.

### 5. Monell Liability

Finally, defendants argue that the complaint must be dismissed because it fails to allege municipal liability under Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978). Here, the named defendants are HHA and Siela A. Bynoe, who is sued in her official capacity as Executive Director of HHA.

Municipalities are liable under § 1983 "where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision

10

officially adopted and promulgated by the [the municipality's] officers." Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 690 (1978). To establish the existence of a policy, a plaintiff must allege: "(1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a 'custom or usage' and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come in contact." Jones v. Westchester Cty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 417 (S.D.N.Y. 2008) (citation omitted).

Plaintiff's argument concerning Monell is rather ill-defined. At one point, plaintiff asserts that he has adequately pled Monell liability because the complaint alleges that defendants have a policy of improperly terminating Section 8 participants based on visits by unauthorized persons. (See Pl. Opp'n Mem. at 21.) The Court fails to see how this purported policy establishes Monell liability for the claims alleged in plaintiff's complaint. More importantly, other than pointing to the circumstances of the instant case, plaintiff alleges no facts to suggest that any such policy exists. That is insufficient to plausibly allege the existence of an unlawful policy.

Additionally, plaintiff's claims against Bynoe in her official capacity also fail because those claims are duplicative of the claims that plaintiff asserts against HHA. See Gazzola v. County of Nassau, No. 16-cv-0909, 2016 WL 6068138, at *4 (E.D.N.Y. Oct. 13, 2016) ("Within the Second Circuit, where a plaintiff names both the municipal entity and an official in his or her official capacity, district courts have consistently dismissed the official capacity claims as redundant.") (citations and internal quotation marks omitted) (collecting cases).

Accordingly, the Court concludes that plaintiff's claims must also be dismissed because he has failed to plausibly allege Monell liability.[6]

## II.  CONCLUSION

For the reasons stated above, the Court grants defendants' motion to dismiss.  The Clerk of Court is directed to close this case.

**SO ORDERED.**

Dated:  March 30, 2017
Central Islip, New York

                                                   /s/     JMA
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE

---

[6] There might be other Monell theories that a plaintiff could invoke to hold a housing authority liable for the types of due process violations alleged here.  However, the specific Monell theory advanced in plaintiff's opposition brief is not viable.